Garsh, J.
This action arises out of a claim of sexual harassment filed by plaintiff Kimberly Dahms (“Dahms”) against her former employer Cognex Corpo *487 ration (“Cognex”), its former Executive Vice President and Chief Financial Officer John J. Rogers (“Rogers”), and its current Chairman of the Board and Chief Executive Officer Robert J. Shillman (“Shillman”). In her complaint Dahms alleges violations of G.L.c. 15 IB (Count I) and Title VII of the Civil Rights Act of 1964 (Count II), intentional infliction of emotional distress (Count III), battery (Count IV), assault (Count V), violations of the Massachusetts Civil Rights Act (Count VI), as well as breach of contract against Cognex (Count VII). Rogers now moves for summary judgment under Mass.R.Civ.P. 56 on Counts I, II, III, IV, V and VI. For the reasons set forth below, Rogers’ Motion for Summary Judgment is allowed in part and denied in part.

BACKGROUND

Where facts in the voluminous summary judgment record are in conflict or subject to contrary inferences, the court adopts the version of the facts most favorable to plaintiff as the party opposing the motion. The most relevant facts are summarized below.
In August of 1990, Dahms began working as an Application Engineer for Cognex, a global corporation that designs, develops and manufactures sophisticated machine vision systems. During her employment with Cognex, Dahms was promoted several times and eventually held the position of Director of Customer Satisfaction for Cognex. In 1991, Rogers began working for Cognex as the Director of Finance and Administration. In 1994, he was promoted to Chief Financial Officer, and in 1995 he was promoted to Executive Vice President.
In late 1996 and early 1997, Dahms began receiving sexually provocative voice mails from Rogers. Rogers and Dahms had been friendly and frequently socialized with each other outside of work, but Rogers’ conduct escalated into harassment after she declined his sexual advances. Examples of some of Rogers’ voice mails include: “I want to kiss you,” “I dream of you," “I think about you at night,” “I think about you while I am with my girlfriend,” “I want to be with you while you are in the office.” Rogers also would wait outside the ladies restroom and let Dahms know that he had been watching to see when her car was parked in Cognex’s parking lot. Rogers’ conduct rose to the level of physical confrontation when he tried to kiss her on the lips in the hallways of Cognex.
In March of 1997 during a business trip to Japan, Rogers attempted to force his way into Dahms’ hotel room on two occasions. On this same trip, while at a restaurant, Rogers put his arm around Dahms’ waist and began grabbing her in a sexual manner until another patron came to her aid. Dahms had no interest in dating or pursuing a romantic relationship with Rogers. Instead, she declined his offers and repeatedly told him that she wanted to keep their relationship friendly and professional.
In the summer of 1997, Dahms complained for the first time about Rogers’ harassing conduct by filing a formal complaint with her direct supervisor. On September 24, 1997, after Shillman was advised that Dahms had lodged a formal complaint against Rogers, he met with Dahms to discuss her concerns that Rogers had been engaging in inappropriate conduct and agreed to look into the matter and take appropriate action.
In late November of 1997, Dahms inquired into the status of her complaint about Rogers since Rogers’ conduct had continued. Rogers continued to leave her frequent voice mails both sexual and non-sexual in nature. Rogers also retaliated against her in several ways up until the time she was terminated on June 6, 2000. Rogers’ conduct included: unjustifiably criticizing her work and questioning her competency in front of her peers, leaving critical voice mails using obscene language, chastising Dahms on her voice mail and then forwarding the message to others at Cognex, denying her reimbursement for certain expenses without explanation, and giving inaccurate and misleading information about her conduct to the Board of Directors during its investigation.
On August 7, 1998, Dahms filed complaints with the Massachusetts Commission Against Discrimination (“MCAD”) and the Equal Employment Opportunity Commission (“EEOC”) alleging sexual harassment and retaliation against Cognex, Shillman and Rogers. On June 24, 1999, Dahms removed her MCAD charge and filed this action.

DISCUSSION

I. Sexual Harassment
a. Quid Pro Quo and Hostile Work Environment Harassment
Rogers challenges the adequacy of Dahms’ sexual harassment claims on statute of limitations grounds on the basis that Dahms does not allege that any conduct constituting sexual harassment occurred during the relevant time frame. “Quid pro quo” sexual harassment exists where an employee’s “submission to or rejection of [sexual] advances, requests or conduct is made . . ., a term or condition of employment or . . . a basis for employment decisions.” G.L.c. 15 IB, §l(18)(a). “Hostile work environment sexual harassment” occurs where “sexual advances, requests for sexual favors, and other verbal or physical conduct of sexual nature . . . have the purpose or effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.” G.L.c. 15IB, §l(18)(b).
For Rogers’ conduct to be actionable as quid pro quo sexual harassment under c. 15IB, Dahms must demonstrate that Rogers conditioned tangible benefits on submission to sexual demands, see College-Town v. MCAD, 400 Mass. 156, 163 (1987), or that Dahms’ rejection of sexual advances was “a basis for employ *488 menl decisions.” G.L.c. 15IB, §l(18)(a). See Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 898 (1st Cir. 1988) ("To make out a prima facie case of quid pro quo harassment, . . . the plaintiff must show that (1) . . . she was subject to unwelcome sexual advances by a supervisor . . . , and (2) . . . her reaction to these advances affected tangible aspects of his . . . , compensation, terms, conditions, or privileges of employment . . .”). For Rogers’ conduct to be actionable as hostile work environment sexual harassment under c. 15 IB, it must have been sufficiently severe and pervasive, considering the totality of the circumstances, to have altered the terms and conditions of Dahms' employment. College-Town, 400 Mass. at 162. The claimed harassing conduct must be both objectively and subjectively offensive. See Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 678 (1993). The conduct complained about need not be sexually motivated. Morehouse v. Berkshire Gas Co., 989 F.Sup. 54, 62 (D.Mass. 1997), quoting Melnychenko v. 84 Lumber Co., 424 Mass. 285, 286 (1997).
The filing of a timely charge of discrimination with the MCAD is a prerequisite to a suit alleging discrimination under G.L.c. 151B, §4. Charland v. Muzi Motors, Inc., 417 Mass. 580, 583-84 (1994). Such a charge must be filed with the agency within six months of the occurrence of the discriminatory act. G.L.c. 15 IB, §5. This six-month filing rule is in effect a statute of limitations for discrimination claims. Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 817 (1988).
The six-month limit, however, does not bar filing “where the unlawful conduct complained of is of a continuing nature.” 804 Code Mass. Regs. §1.03(1); see Rock v. MCAD, 384 Mass. 198, 205-08 (1981) (upholding “continuing violation” regulation as permitting MCAD to remedy ongoing discriminatory policies). Under a continuing violation theory, where a plaintiff alleges an ongoing course of discrimination, a charge may encompass unlawful conduct outside of the limitations period, as long as at least one incident of unlawful conduct occurred within the required period. Lynn Teachers Union v. MCAD, 406 Mass. 515, 520-21 (1990).[2]
Dahms filed her complaint with the MCAD on August 7, 1998. Therefore, Dahms must adduce evidence sufficient to support a finding that Rogers sexually harassed her after February 7, 1998. The record makes clear that Rogers’ physical advances stopped by December of 1997. Dahms then alleges three separate areas of conduct as amounting to quid pro quo harassment or contributing to a hostile work environment during the six-month limitations period, namely that Rogers unfairly criticized her work, scrutinized and partially rejected her expense report in March of 1998 without justification, and lied to the Special Committee formed to investigate her sexual harassment allegations in the fall of 1998.
“(S]pecific incidents within the statutory period cannot be examined in isolation.” Ruffino v. State Street Bank & Trust Co., 908 F.Sup. 1019, 1039 (D.Mass. 1995). Rather, conduct occurring outside the limitations period may cast a timely incident in an abusive light. Id. It is the cumulative effect of the acts taken together which may make those acts ones amounting to employment decisions being made on the basis of rejection of sexual advances or which create a hostile work environment. The misconduct alleged during the filing period need not provide an independent cause of action. Id.
Conduct which is not specifically sexual in nature may nevertheless be evidence of quid pro quo or hostile environment sexual harassment within the limitations period. See King v. Hillen, 21 F.3d 1572, 1583 (Fed. Cir. 1994) (“(c)onduct that is based on the sex of the victim, whether or not the conduct is ‘of a sexual nature,’ is appropriately considered in determining whether an abusive or hostile environment has been created”). It is a question of fact whether Rogers engaged in harassing conduct, albeit not explicitly involving sexual activity or language, that was sufficiently patterned or pervasive and directed at Dahms because of her sex.
Viewed in the context of Roger’s blatantly inappropriate and sexually aggressive behavior in late 1996 and 1997, there is a genuine issue of material fact as to whether Rogers’s alleged sexual advances were implicitly made a conditional portion of Dahms’ employment and advancement in Cognex management even after those advances stopped. Further, whether Rogers’ conduct following December of 1997 was sufficiently severe and pervasive to create an abusive and hostile work environment in the eyes of an objective and reasonable employee should be resolved at trial. See Messina v. Araserve, Inc., 906 F.Sup. 34, 37 (D.Mass. 1995) (claimed conduct must be both objectively and subjectively offensive). Because there are genuine issues of fact material to the resolution of the sexual harassment claims, Rogers is not entitled to summary judgment on those claims.[3]
b. Retaliation
To establish a prima facie case of retaliation, Dahms must show that: (1) she engaged in protected conduct under federal or Massachusetts law; (2) she suffered adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir.), cert. denied, 501 U.S. 1218 (1991). At a minimum there must be competent evidence that Rogers knew of Dahms’ protected activity and that a retaliatory motive played a part in the adverse employment action alleged. Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994).
The record sets forth sufficient evidence to make out a claim for a jury as to whether Rogers retaliated against Dahms for declining his sexual advances and *489 reporting his conduct to her supervisor. Dahms alleges that Rogers was instrumental in causing her to suffer adverse employment action through a litany of humiliating remarks, character attacks, fraudulent performance reviews, and restrictions in her access to the building, resulting in the withholding of stock, reduction of her responsibilities and ultimately cumulating in her termination. Moreover, there are sufficient facts to infer that Rogers was aware of the Dahms’ formal complaint and that his conduct was motivated by a retaliatoiy motive. There also are material questions of fact whether Rogers’ alleged retaliatory acts “materially disadvantaged” Dahms in her employment with Cognex.
II.Individual Liability Under Title VII
Rogers argues that there is no individual liability under Title VII, and, therefore, the Title VII claims against him individually should be dismissed. Title VII generally prohibits an employer from engaging in discrimination in the workplace. 42 U.S.C. §2000 e-2(a)(1). It defines “employer” as “a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. §2000e(b). The central question is whether the phrase “any agent” encompasses individual supervisors for purposes of imposing liability or whether that phrase simply means that an employer is liable for the acts of those employees acting within the scope of their employment but does not extend liability beyond the employer to the individual harasser.
“[EJveiy circuit court which has addressed the issue has found that there is no individual liabiliiy under Title VII.” Homey v. Westfield Gage Co., 95 F.Sup.2d 29, 32 (D.Mass. 2000) (citations omitted).[4] See also Meara v. Bennett, 27 F.Sup.2d 288, 290 (D.Mass. 1998); Chatman v. Gentle Dental Center of Waltham, 973 F.Sup. 228, 237 (D.Mass. 1997). But see Ruffino, 908 F.Sup. at 1047-48 (individual agents may be personally liable for violations of Title VII). The plaintiff has proffered no good reason for this court to deviate from the persuasive reasoning of the many courts which have concluded that there is no individual liability under Title VII. Rogers is therefore entitled to dismissal of Count II.
III.Emotional Distress
Rogers asserts that the exclusivity provision of the Workers’ Compensation Act, G.L.c. 152, §24, precludes recovery against him for intentional infliction of emotional distress and, alternatively, that Dahms has not produced evidence sufficient to make out the elements of this cause of action. That statute bars claims not only against the insured employer, but also claims against co-employees acting within the scope of their employment. Anzalone v. Mass. Bay Transp. Auth., 403 Mass. 119, 124-25 (1988).
Although the Workers’ Compensation Act covers claims for intentional torts committed in the course of the employment relationship, Doe v. Purity Supreme, 422 Mass. 563, 565 (1996), an “intentional tort not related to the interest of the employer” is not preempted by the Act. See O'Connell v. Chasdi, 400 Mass. 686, 690 (1987). On this record it cannot be said that Dahms will be unable to prove any set of facts demonstrating that Rogers was acting neither within the course of his employment nor in furtherance of the interest of Cognex when he committed some of the actions alleged to constitute intentional infliction of emotional distress. See Brown v. McClennen & Fish, 45 Mass.App.Ct. 212, 218 (1998). In addition, Dahms’ allegations, if credited by a jury, could be found to be conduct that is extreme and outrageous and beyond all possible bounds of decency and utterly intolerable in a civilized community and that such actions caused the plaintiff to suffer severe distress. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
IV.Assault and Battery
Rogers asserts that Dahms falls to set forth behavior which rises to the level of an assault and or a battery. A battery is the intentional and unjustified use of force upon the person of another. Le Saint v. Weston, 301 Mass. 136, 138 (1938). Here, there is sufficient evidence that the defendant brought about a harmful or offensive contact that the defendant intended. Waters v. Blackshear, 412 Mass. 589, 590 (1992). To constitute an assault, Dahms must show an intentional threat or attempt by Rogers, accompanied by overt acts, to inflict present harm upon her, as a result of which she was put in reasonable apprehension of immediate physical harm. Ross v. Michael, 246 Mass. 126, 130 (1923). Once again, drawing all inferences favorable to the non-moving party, the record contains material disputed questions as to whether Rogers’ conduct constituted an assault.
V.Massachusetts Civil Rights Act
Dahms’ claim under the Massachusetts Civil Rights Act (“MCRA”), G.L.c. 12, §111, arises from the same facts as her c. 15IB claim and, thus, Rogers contends it is barred. Dahms opposes the motion for summary judgment on Count VI on the grounds that her MCRA claim is not barred because she complied with the procedural requirements of c. 15 IB.[5]
The language and logic of the most relevant case law as well as the language of Chapter 15 IB itself demonstrate that Chapter 15 IB, where applicable, provides an exclusive remedy, regardless of whether the plaintiff has satisfied that statute’s procedural requirements. See Green v. Wyman Gordon Co., 422 Mass. 551, 557 (1996); Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994); Charland, 417 Mass. at 580. When the Legislature enacted Chapter 15 IB. it chose to “provide! ] a detailed framework to protect the citizens of the Commonwealth against employment discrimination.” Charland, 417 Mass. at 583. The Supreme Judicial Court has broadly construed the exclusivity provision in chapter 15 IB, §9 as mean *490 ing that “where applicable, G.L.c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections . . .” Id. at 585. See also Green, 422 Mass. at 557-58 (“Where, as here, c. 15 IB applies, its comprehensive remedial scheme is exclusive, in the absence of an explicit legislative command to the contrary”). The fact that in Charland and Green, the plaintiffs had failed to comply with procedural requirements in Chapter 15 IB and here the plaintiff did comply does not undercut the exclusivity of Chapter 15 IB. Indeed, while the Supreme Judicial Court has not yet decided whether a plaintiff who complies with the procedural requirements in Chapter 15 IB may bring a suit under the Civil Rights Act, in an analogous context the Court has stated that “if a remedy under G.L.c. 151B is available to a plaintiff, he may not pursue a remedy under G.L.c. 93, §103. Accordingly, should a judge decide that G.L.c. 151B is or was available to the plaintiff, the plaintiff would have no viable c. 93, §103, claim under the teaching of Charland.” Agin, 417 Mass. at 672. There is no reason to distinguish a suit brought under c. 93, §103 from one brought under c. 12, §111. See Green, 422 Mass. at 557 (“For the reasons stated above [holding that the plaintiff could not maintain a suit under G.L.c. 214, §1C], the plaintiffs claims under the civil rights act and the equal rights act are similarly precluded”). Accordingly, because G.L.c. 15 IB remedies are available to Dahms, the exclusivity provision of that statute bars her Civil Rights Act claim.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendant, John J. Rogers’ motion for summary judgment be ALLOWED as to Counts II and VI. Defendant’s motion is otherwise DENIED.

Sexual harassment as defined in G.L.c. 151B includes “sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature” which has “the purpose or effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile humiliating or sexually offensive work environment.” G.L.c. 151B, §l(18)(b).

Rogers also argues that Dahms’ claims for quid pro quo and hostile work environment harassment should be dismissed on substantive grounds. As to the claim for quid pro quo harassment, he contends that the behavior complained of neither took place nor affected a tangible aspect of Dahms’ employment at Cognex. However, Dahms’ deposition testimony that she refused Rogers’ sexual propositions coupled with her documented changes in the conditions of her employment raise factual questions as to whether the conduct took place and whether her reaction to Rogers’ conduct served as a basis for the employment decisions affecting her.
As to the claim for hostile work environment, Rogers contends that his conduct was not so severe or pervasive as to affect a reasonable person’s work performance. While this may prove true, whether Rogers’ comments and conduct were pervasive enough to affect Dahms’ work performance is a question that is appropriately determined at trial.

The First Circuit has declined to decide the question of individual liability under Title VII. See Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 444 (1st Cir. 1997).

Chapter 15IB, §5 requires a plaintiff, among other things, to bring her action to the MCAD within six months of the discriminatory act. The Supreme Judicial Court has made it clear that if c. 151B applies, a plaintiff may not circumvent the procedural requirements or limitations period of that statute by bringing a claim under a different statute. Char-land i). Muzi Motors, Inc., 417 Mass. 580, 585 (1994) (employee’s failure to file a timely complaint with the MCAD precluded employment discrimination action under the Massachusetts Equal Rights Act, G.L.c. 93, §§102, 103); Green v. Wyman Gordon Co., 422 Mass. 551, 557 (1996) (failure to timely commence action with the MCAD precludes suit alleging violations of the Sexual Harassment Act, G.L.c. 214, §1C, the Massachusetts Civil Rights Act, G.L.c. 12, §111, and the Massachusetts Equal Rights Act, G.L.c. 93, §103).