Houston, J.
This action arises out of a sexual harassment claim filed by the plaintiff, Kimberly Dahms (“Dahms”) against her former employer, Cognex Corporation (“Cognex"), its Chairman of the Board and Chief Executive Officer, Robert J. Shillman (“Shillman”), and its former Executive Vice President, John J. Rogers, Jr. (“Rogers”). In her complaint, Dahms alleges violations of G.L.c. 15 IB (Count I) and Title VII of the Civil Rights Act of 1964 (Count II), intentional infliction of emotional distress (Count III), violations of the Massachusetts Civil Rights Act (Count VI), and breach of contract (Count VII).[2] Cognex and Shillman now move for partial summary judgment under Mass.R.Civ.P 56 as to Counts I, II, III, VI, and VI l.[3] For the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
Where the facts in a voluminous summary judgment record are in conflict or subject to contrary inferences, this court adopts the version of the facts most favorable to Dahms, as she is the party opposing the motion. The most relevant facts are as follows.
In August of 1990, Dahms began working for Cognex, a high-tech corporation that designs, develops and manufactures sophisticated computer machine vision systems used to perform inspection tasks. During her employment, Cognex promoted Dahms several times. Dahms eventually held the position of Director of Customer Satisfaction. In 1991, Rogers began working for Cognex as Director of Finance and Administration. In 1994, he was promoted to Chief Financial Officer. A year later, Rogers was elevated to the position of Executive Vice President.
Dahms alleges that in late 1996, and early 1997, she began receiving sexually explicit e-mail and voice mail messages from Rogers. Purportedly, Rogers and Dahms had been friendly and frequently socialized with each other outside of work, but Rogers’s conduct turned into ongoing harassment after she declined his sexual advances. For example, Rogers frequently commented on Dahms’s physical appearance in the work *194 place, asked her out on dates, and tried to kiss her in the hallways of Cognex.
Rogers’s harassment escalated in March 1997, when during a business trip to Japan, he made several sexual advances towards Dahms. Rogers put his arm around her, grabbed her in a sexual manner, and, on two occasions, attempted to force his way into her hotel room. Dahms repeatedly declined Rogers’s offers and told him that she wanted to keep their relationship on a professional level.
In the summer of 1997, Dahms complained for the first time about Rogers’s harassing conduct by filing a formal complaint with her direct supervisor, Patrick Alias (“Alias”). Alias told Dahms to speak to Jo Ann Woodyard, Director of Human Resources, or to a lawyer. Eventually, Alias reported the matter to Shill-man. On September 24, 1997, Shillman met with Dahms to discuss her concerns that Rogers had been engaging in inappropriate conduct and agreed to look into the matter and take appropriate action. Shillman was particularly concerned about Dahms’s allegations because Rogers had engaged in two prior affairs with Cognex employees.
No action was taken on Dahms’s complaint for several weeks. During that period, Dahms alleges Rogers’s harassing conduct continued. In November of 1997, Shillman met with Rogers to discuss Dahms’s allegations, and Rogers denied any inappropriate behavior. Because Rogers continued to leave Dahms frequent voice mail messages, of both a sexual and a non-sexual in nature, she inquired about the status of her complaint in late November.
In early December 1997, Shillman met with Dahms to determine if she wished to take any further action. Dahms informed Shillman that Rogers’s conduct was continuing. Nonetheless, Shillman told her that Cognex would not terminate Rogers because such a course of action would cause Cognex’s stock to drop in value.
In June of 1998, Shillman allegedly attempted to convince Dahms to sign an agreement releasing all her claims against him, Rogers and Cognex in exchange for 10,000 shares of stock options, which the Cognex Board of Directors had already granted to her as compensation for her good work performance. On June 29, 1998, Shillman informed Dahms that although her job performance was excellent, she would not receive stock options unless she executed the release. Shillman allegedly told Dahms that she was responsible for Rogers’s sexual harassment because she did not act or dress like a nun, and that her appearance and work attire were sexually provocative. Shillman also asked Dahms if and when she was planning on having children, and asked if she was worried about her “eggs going bad.”
On August 7, 1998, Dahms filed complaints with the Massachusetts Commission Against Discrimination (“MCAD”) and the Equal Employment Opportunity Commission (“EEOC”) alleging sexual harassment and retaliation against Cognex, Shillman and Rogers. Dahms alleges that Shillman and Rogers’s retaliation continued until she was terminated on June 6, 2000. Shillman refused to give Dahms the 10,000 shares of stock options that had previously been approved by the Board of Directors. Shillman and Cognex also imposed numerous restrictions on Dahms’s employment privileges at Cognex. She was banned from the Cognex premises during the evenings and nights during the week. Dahms’s keycard was altered so as to restrict her ability to open Cognex’s exit and entrance doors. Cognex’s Information Systems Department restricted Dahms’s access to the Cognex computer system. Various restrictions were placed on Dahms’s access to Cognex documents, business records and meetings. Shillman sent e-mails to other Cognex executives instructing them not to respond to any of Dahms’s e-mail messages to them. Furthermore, Dahms alleges that after filing her claims, her job performance was falsely criticized on a daily basis.
On June 24, 1999, Dahms removed her MCAD charge and filed this action.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’1 Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat’l Bank, 369 Mass. at 553. The court should not weigh evidence, assess credibility or find facts. The court may only consider the material facts and then apply them to the law. See Kelley v. Rossi, 395 Mass. 659, 663 (1985). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings or mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. *195 805, 809 (1991); Kourouvacillis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. Sexual Harassment Claim Under Chapter 15 IB (Count I)
The defendants contend that Dahms has not factually substantiated her claims under G.L.c. 151B for sexual harassment and retaliation and are, therefore, entitled to summary judgment. This court disagrees.
In general, under G.L.c. 151B, §4, an employer, or its agent, may be liable for discriminating against an individual on the basis of sex in the terms, privileges or conditions of his or her employment. Such discrimination may include sexual harassment by an employer or its agent. See G.L.c. 151B, §4(16A). Courts have recognized two forms of sexual harassment. “Quid pro quo” sexual harassment exists where an employee’s “submission to or rejection of [sexual] advances, requests or conduct is made ... a term or condition of employment or ... a basis for employment decisions.” G.L.c. 151B, §1(18)(a). “Hostile work environment sexual harassment” occurs where “sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . have the purpose and effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile, humiliating, or sexually offensive work environment.” G.L.c. 151B, §1(18)(b).
An employer who is notified of sexual harassment in the workplace and fails to take adequate remedial action also violates G.L.c. 151B, §4. College-Town v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 167 (1987). Once Shillman and Cognex were notified of Rogers’s conduct aimed towards Dahms, they had “an affirmative obligation to remedy the situation.” Id. Although the defendants dispute the validity of Dahms’s allegations, it remains a question of fact whether Shillman, as Cognex’ agent, adequately responded to Dahms’s complaints of quid pro quo and hostile work environment harassment once Shillman was notified of it. Thus, despite questions regarding the strength of Dahms’s allegations against Shillman, at this stage and on this record, it cannot be said that Dahms will be unable to prove any set of facts demonstrating that Shillman inadequately responded to her complaints about Rogers.
Chapter 15 IB also makes it unlawful for an employer to “discharge, expel, otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint [alleging discrimination].” G.L.c. 15 IB, §4(4). “The Legislature recognized that a person who complained of discrimination risked retaliation, and separately prohibited retaliation.” College-Town, 400 Mass. at 168; G.L.c. 151B, §4(4). In order to establish a case of retaliation, Dahms must prove: (1) that she was engaged in a protected activity; (2) that her employer was aware of the protected activity; (3) that she suffered an adverse employment action; and (4) that the employment action followed the engagement in protected activity within such period of time that the court can infer retaliatory motivation. See Ruffino v. State Street Bank and Trust Co., 908 F.Sup. 1019 (D.Mass 1995); Timko v. City of Boston, Civil No. 92-6986 (Mass. Super. Ct. Aug. 1, 1994) (Hinkle, J.); Hudson v. Pembroke Elks Lodge, 22 M.D.L.R. 45, 49 (2000).
There is no dispute that, by filing a complaint for sexual harassment under G.L.c. 151B, §4, Dahms engaged in protected behavior. See Prader v. Leading Edge Prods., Inc., 39 Mass.App.Ct. 616, 618 (1996). It is likewise undisputed that Shillman knew Dahms had filed a complaint, and that retaliation was illegal. Dahms alleges she suffered adverse employment action such as humiliating remarks, character attacks, fraudulent performance reviews, and restrictions on her access to the building. Dahms further claims that this treatment resulted in the withholding of stock, the reduction of her responsibilities, and ultimately her termination. A genuine dispute of material fact remains, however, as to whether Dahms’s adverse employment action had a causal relationship to her protected activity. See Prader at 617. While the length of time between the two events tends to mitigate any such causal connection, it is, nonetheless, an issue of fact that must be reserved for the jury. Accordingly, summary judgment on Count I is denied.
II. Individual Liability Under Title VII (Count II)
Shillman argues that the Title VII claims against him individually should be dismissed because there is no individual liability under Title VII. Title VII generally prohibits an employer from engaging in discrimination in the workplace. 42 U.S.C. §2000e-2(a)(1). It defines “employer” as “a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person.” 42 U.S.C. §2000e(b). As this court (Garsh, J.) noted in dismissing the Title VII count against Rogers,
[t]he central question is whether the phrase “any agent” encompasses individual supervisors for purposes of imposing liability or whether that phrase simply means that an employer is liable for the acts of those employees acting within the scope of their employment but does not extend liability beyond the employer to the individual harasser.
Civil No. 99-3192 (Middlesex Super. Ct. Nov. 20, 2000) (12 Mass. L. Rptr. 486).
To date, no courts in Massachusetts, including the First Circuit, have resolved this issue. See Serapion v. Martinez, 119 F.3d 982, 992 (1997); see also Daley v. Wellpoint Health Networks, Inc., 146 F.Sup.2d 92, 104 (2001). Every circuit court, however, which has addressed the issue has found that there is no individual liability under Title VII. Horney v. Westfield Gage Co., 95 F.Sup.2d 29, 33 (D.Mass. 2000) (citations omitted). See also Meara v. Bennett, 27 F.Sup.2d 288, 290 *196 (D.Mass. 1998); Chatman v. Gentle Dental Center of Waltham, 973 F.Sup. 228, 237 (D.Mass. 1997). But see Ruffino, 908 F.Sup. at 1047-48 (individual agents may be personally liable for violations of Title VII). Dahms has offered no contrary authority, nor any good reason for this court to deviate from the law previously recognized in this case. Therefore, as with the dismissal of this count against Rogers, because there is no individual liability under Title VII, Shillman is entitled to summary judgment on Count II.
III.Intentional Infliction of Emotional Distress (Count III)
Shillman argues that Count III, intentional infliction of emotional distress, must fail because the exclusivity provision of the Workers’ Compensation Act, G.L.c. 152, §24, precludes recovery against him for intentional torts, and, alternatively, that Dahms has failed to proffer evidence sufficient to establish the elements of this cause of action. Dahms counters that Shillman’s harassing conduct exceeded the scope of his employment, and therefore, her claim is not preempted by the statute’s exclusivity provision.
A suit for an intentional tort in the course of the employment relationship is barred by the exclusivity provision of the Workers’ Compensation Act. Anzalone v. Mass. Bay Transp. Auth., 403 Mass. 119, 124-25 (1988). The statute bars claims not only against the insured employer, but also claims against co-employees. Id. However, an “intentional tort which is in no way within the scope of employment furthering the interests of the employer” is not preempted by the Act. The issue, therefore, is whether Shillman’s alleged conduct occurred within the scope of his employment and whether it was intended to further the interests of Cognex. “(C)onduct of an agent is within the scope of employment if it is of the kind he is employed to perform . . .; if it occurs substantially within the authorized time and space limits . . . and if it is motivated, at least in part, by a purpose to serve the employer . . .” Doe v. Purity Supreme, 422 Mass. 563, 565 (1996) (citations omitted).
In the summary judgment record before this court, Dahms alleges that Shillman purposely took no action on her harassment complaint for the purpose of protecting Cognex’s stock price and his own financial interest. She claims Shillman lied about her job performance and made disparaging remarks about her to the Board of Directors during its investigation. Shill-man allegedly investigated Dahms in an aggressive manner which was not used against any other employee. Dahms also claims that Shillman caused her to receive false and disparaging employment reviews that eventually led to her termination. There is no genuine issue of material fact that these allegations against Shillman, unlike those asserted against Rogers, all took place within the confines of Dahms’s workplace and were purportedly motivated, at least in part, by a desire to serve Cognex. Moreover, Dahms’ claim for emotional distress is “merely [a] recast version of her sexual harassment claim under G.L.c. 151B.” See Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996). Dahms’s claim, therefore, is barred by the exclusivity provision of the Workers’ Compensation Act. Accordingly, Shillman’s motion for summary judgment on Count III is allowed.[4]
IV.Massachusetts Civil Rights Act (Count VI)
The defendants are entitled to summary judgment on Dahms’s claim under the Massachusetts Civil Rights Act, G.L.c. 12, §11I, as G.L.c. 151B is the exclusive remedy for employment discrimination claims. This court (Garsh, J.) previously noted, “the language and logic of the most relevant case law as well as the language of Chapter 151B itself demonstrate that Chapter 151B, where applicable, provides an exclusive remedy regardless of whether the plaintiff has satisfied the statute’s procedural requirements.” Dahms v. Cognex Corp., No. 99-3192 (Middlesex Sup. Ct. Nov. 20, 2000) (12 Mass. L. Rptr. 486). See also Green v. Wyman Gordon Co., 422 Mass. 551, 557 (1996); Agin v. Federal White Cement, 417 Mass. 669, 672 (1994); Charland v. Muzi Motors Inc., 417 Mass. 580, 580 (1994). Absent authoritative guidance to the contrary, this court finds that there is no reason to depart from the law previously established in this case. Accordingly, Shillman’s motion for summary judgment on Count IV is allowed.
V.Breach of Contract (Count VII)
Cognex’s motion for summary judgment on Count VI, breach of contract, requires this court to determine whether Cognex’ employee handbook constitutes a legally binding and enforceable contract delineating the terms and conditions of Dahms’s employment. Summary judgment maybe granted if this court finds that, based upon the evidence presented, no reasonable jury could conclude that the parties in this case formed a binding contract. See O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 691-94 (1996); O’Malley v. Milford-Northbridge VNA, Civil No. 99-214 (Mass. Super. Ct. Sept. 22, 1999) (Hillman, J.) (10 Mass. L. Rptr. 567).
It is well settled in Massachusetts that employment is presumed at-will unless there exists an express or implied contract governing its terms and conditions. See Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). The Supreme Judicial Court has held that a personnel manual may, in some cases, form the basis for an express or implied contract. Id. at 13; O’Brien., 422 Mass. 686, 691. There is no explicit test or “rigid list of prerequisites” to aid in ascertaining whether a personnel manual constitutes a binding contract under Massachusetts law. See O’Brien, 422 Mass. at 692. Rather, the several factors articulated by the SJC in Jackson should be considered by fact finders to determine whether or not the terms of a personnel manual are at least impliedly a part of an employment contract. See Id.
*197 In Jackson, the SJC held that an implied contract based on the terms of a personnel manual failed to exist where: (1) the employer retained the right to unilaterally modify the terms of the manual; (2) the terms of the manual were not negotiated; (3) the manual stated that it provided only guidance regarding the employer’s policies; (4) no term of employment was specified in the manual; and (5) the employee did not sign the manual to manifest intent. See O’Brien, 422 Mass. at 694; O’Malley, supra. However, these factors are intended to assist in determining the “central inquiry” whether an employee could have reasonably believed that the employment manual constituted the terms or conditions of employment, equally binding on employer and employee. See Derrig v. Wal-Mart Stores, Inc., 942 F.Sup. 49, 55 (D.Mass. 1996), citing O’Brien, 422 Mass. at 693.
Following O’Brien, the threshold issue on this claim is whether it was objectively reasonable for Dahms to believe that the terms of her handbook comprised a mutually binding obligation. From this record, it cannot be said that Dahms will be unable to establish that her Cognex employment handbook constituted a binding contract. Under the plain terms of the handbook, Cognex assumed certain responsibilities, including, but not limited to, “providing a competitive compensation package with periodic salary and performance reviews to ensure that high quality is recognized and duly compensated for.” Whether it was reasonable for Dahms to believe that this language constituted her terms and conditions of employment is a question of fact which must be reserved for the jury. Accordingly, summary judgment on Count VII is denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants Cognex and Robert Shillman’s motion for summary judgment be ALLOWED as to Counts II, III, and VI. Defendants’ motion is otherwise DENIED.

 This court (Garsh, J.) granted Rogers’s motion for summary judgment as to Counts II and VI on November 20, 2000 [12 Mass. L. Rptr. 486].

ShiIlman solely moves for summary judgment as to Counts II and III. Cognex solely moves for summary judgment as to Count VII.

Because Dahms’s claim is barred by the exclusivity provision of the Workers’ Compensation Act, this court need not address Shillman's alternative argument that Dahms has not provided sufficient evidence to sustain a claim of intentional infliction of emotional distress.