Smith, J.
Paul Evans (“Evans”), a former employee of The TJX Companies (“TJX’) brought this action against TJX,[2] Marmaxx Inc. (“Marmaxx”), Michael Manoogian (“Manoogian”), Michael Tilley (“Tilley”), and John Doe and Richard Roe (collectively “the defendants”), unknown senior executives of the defendants. Evans alleges discrimination on the basis of his sexual orientation, violations of his civil rights, intentional and negligent infliction of emotional distress, *130 strict liability, and breach of contract. Pursuant to Mass.R.Civ.P. 12(b)(6), the defendants have moved to dismiss five of the counts: CountV, negligent infliction of emotional distress against Manoogian; Count VI, intentional infliction of emotional distress against Tilley; Count VII, violation of the Massachusetts Civil Rights Act (“MCRA”) against Manoogian; Count VIII, violation of the MCRA against TJX; and Count X, breach of contract against TJX. The defendants also move to dismiss all claims against John Doe and Richard Roe. For the following reasons, the defendants’ motions are ALLOWED.

BACKGROUND

Under Mass.R.Civ.P. 12(b)(6), a complaint should not be dismissed for failure to state a claim “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief.” Gen. Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992), quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When reviewing such a motion to dismiss, the allegations in the complaint, as well as inferences that may be drawn therefrom in the plaintiffs favor, are to be taken as true. Gen. Motors Acceptance Corp., 413 Mass. at 584; Nader, 372 Mass. at 98.
The court ordinarily may not consider matters outside of the pleadings because a motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. Riebold v. Eastern Casualty Ins. Co., Civil No. 97-0306 (Middlesex Super.Ct. June 4, 1997) (Brassard, J.) (hereinafter cited as 6 Mass. L. Rptr. 706). When matters outside of the pleadings are presented by the parties and considered by the court, a motion for failure to state a claim must be treated as a motion for summary judgment under Mass.R.Civ.P. 56. See Mass.R.Civ.P. 12(b)(6); Watros v. Greater Lynn Mental Health & Retardation Ass’n., 421 Mass. 106, 109 (1995). A document is not outside of the complaint, however, in the limited instance where the complaint specifically refers to the document and the document’s authenticity is not questioned by either party. Riebold, 6 Mass. L. Rptr. at 707. See also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). In paragraphs 47-51 of his complaint, the plaintiff quotes and discusses various provisions of the defendant TJXs employee handbook. These provisions form the basis of the plaintiffs breach of contract claim as set forth in Count X of the complaint. If the plaintiff refers to a written document in the complaint, that document is considered part of the complaint. Riebold, 6 Mass. L. Rptr. at 707. See also Watterson, 987 F.2d at 4. In addition, neither party disputes the authenticity of the TJX employee handbook. Therefore, the court treats the TJX employee handbook as part of the pleadings for purposes of this motion to dismiss.
In his complaint, Evans sets forth the following facts. Evans began working for TJX in 1988 as an Assistant Manager of a TJX retail store in Cerrito, California. Evans then worked at various other TJX retail stores before being promoted to District Manager of an area encompassing Rhode Island and Connecticut. Evans was eventually employed as New England South District Manager. Evans alleges that while he was employed as New England South District Manager, defendants Tilley and Manoogian, employees of TJX, subjected him to hostility, harassment, and threats due to his sexual orientation.
Tilley was the Regional Manager charged with overseeing Evans’s district. At some point unspecified by the complaint, Manoogian assumed Tilley’s supervi-soiy duties. At another unspecified point in time, Evans requested from Tilley a district change to one inclusive of Provincetown. When making this request, Evans disclosed to Tilley that he had recently moved to Provincetown to live with his same sex partner and that they were committed to establishing a life together. Shortly after he made this disclosure, about September 1999, Evans alleges that Tilley and Manoogian met with Evans and informed him that he must accept a demotion from his recent promotion to District Manager or be subjected to a series of “corrective actions” that would result in his termination.
Evans reported these threats to TJXs Human Resources department. Human Resources assured Evans that the threats would be investigated, and that TJX would not tolerate threats of this nature. Further, Human Resources assured Evans that a third-party regional supervisor would objectively review any adverse personnel decisions made against him.
Within months of the threats, Manoogian began issuing written warnings to Evans for infractions of company policy occurring within individual stores. These infractions included incorrect sizers, improperly aligned clothing racks, and an inadequately staffed jewelry counter. According to Evans, these infractions constitute “micro issues” which are the responsibility of each Store Manager. According to Evans, District Managers are responsible for “macro issues,” or matters affecting the entire district. Despite citing Evans individually for these infractions, Manoogian instructed Evans not to take corrective action against the store personnel. By instructing Evans not to take corrective action against those employees responsible for the “micro issues,” Evans argues that he was stripped of the inherent authority of his position. Evans alleges that Manoogian’s conduct constituted a “series of ‘corrective actions’ which plaintiff was stripped from correcting, tying plaintiffs hands during a warning period previously threatened, and designed to culminate in Plaintiffs termination . ..” after twelve years of service to TJX. (Complaint at par. 15.)
The year prior to requesting a move to a district inclusive of his Provincetown home, Evans’s reviews *131 were favorable and gave Evans an overall rating of “meets expectations."
At some time during his employment with TJX, Evans was provided with a copy of the T. J. Maxx Policy Book (Policy Book).[3] On the introductory page, the Policy Book states the following in italic type: “The Policy Book is not intended to create any contractual or other legal right. It is designed solely as a guide to demonstrate to Store Management and Associates the manner in which T.J. Maxx operates." The italic type further indicates that the policies are subject to change at the company’s discretion, and that policies may be continually refined and revised. The Policy Book contains a provision entitled “Open Door.” The Policy Book states that Open Door is a “communication vehicle” supported by the company to “ensure open lines of communication at every level.” Because Open Door is designed to ensure that “all Associates are treated with dignity, courtesy and respect,” the policy book sets forth management’s responsibility to address Associate concerns in a fair, objective, and confidential manner. Evans alleges that when he reported his concerns regarding Manoogian’s threats to Human Resources pursuant to the Open Door policy, Human Resources assured him that an objective third-party supervisor would monitor the situation. Evans asserts that the investigation never occurred and that Human Resource’s other promises were not kept. Evans argues that this was in contravention of a “process of evaluation and review, as outlined in the company’s so-called ‘open door policy’ employment handbook, and TJXs discrimination and harassment policies.”
Evans also contends that outside of meetings, Manoogian refused to speak to him, even while sitting at a lunch table with him for over one hour. The complaint also alleges that Manoogian told unidentified TJX employees that he wanted to “beat the shit” out of Evans.
The defendants’ brief accompanying their motion to dismiss indicates that on August 28, 2001, Evans filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) recounting these allegations. On December 6, 2002, Evans withdrew his complaint from the MCAD. On November 4, 2003, Evans filed a ten-count complaint with this court.
The Defendants now move to dismiss certain counts of the complaint. Specifically, the defendants argue that Evans’s emotional distress claims against Manoogian and Tilley are precluded by the exclusivity provision of the Workers’ Compensation Act. In addition, the defendants allege that G.L.c. 151B provides the exclusive remedy for claims regarding employment discrimination and, consequently, Evans’s MCRA claims are barred. Defendants also argue that Evans’s breach of contract claim against TJX must be dismissed because Evans has failed to establish the existence of an employment contract. Last, the defendants contend that all claims against John Doe and Richard Roe must be dismissed pursuant to Mass.R.Civ.P. 17 because Evans has had a reasonable opportunity to discover the existence and identities of these parties.

DISCUSSION

1. Emotional Distress Claims
The defendants argue that Evans’s emotional distress claims are barred by the exclusivity provision of the Workers’ Compensation Act (“WCA”). The WCA states in pertinent part: “An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given to his employer, at the time of his contract of hire, written notice that he claimed such right . . .” G.L.c. 152, §24. There is no suggestion here that Evans ever notified TJX that he wished to preserve his right to bring common-law claims against TJX. Therefore, the court must determine whether Evans’s specific claims fall within the exclusivity provision of the WCA.
Common-law claims are barred by the exclusivity provision where (1) the plaintiff is shown to be an employee, (2) his condition is shown to be a “personal injury” within the meaning of the WCA, and (3) the injury is shown to have arisen out of and in the course of employment. Foley v. Polaroid Corp. ,381 Mass. 545, 548-49 (1980). “An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects.” Doe v. Purity Supreme, Inc., 422 Mass. 563, 566 (1996), quoting Caswell’s Case, 305 Mass. 500, 502 (1940). Actions for intentional and negligent infliction of emotional distress against an employer are “personal injuries” within the meaning of the WCA and barred by the exclusivity provision. Green v. Wyman-Gordon Co., 422 Mass. 551, 560-62 (1996); Doe v. Purity Supreme, Inc., 422 Mass. at 566; Foley, 400 Mass. at 552. Evans alleges that he was subjected to the harassment at work; consequently, the personal injury arises out of his course of employment.
Here, Evans asserts his emotional distress claims not against his employer, TJX, but against his coworkers, Manoogian and Tilley. Common-law tort claims against coworkers are similarly barred by the exclusivity provision of the WCA if the fellow employee was acting in the scope of employment. Anzalone v. Massachusetts Bay Transp. Auth., 408 Mass. 119, 124-25 (1988); Fusaro v. Blakely, 40 Mass.App.Ct. 120, 123 (1996). Evans argues that the negligent and intentional infliction of emotional distress claims are not barred because the commission of a tort by one employee against another cannot be considered within the scope of employment. Conduct is within the scope of employment if “it is of the kind [the coworker] is *132 employed to perform ... if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer.” Purity Supreme, 422 Mass. 563, 565-67 (1996).
Evans’s complaint centers on Manoogian and Tilley’s threat to Evans that if he did not accept a demotion, he would be subjected to a series of “corrective actions.” The complaint alleges that these “corrective actions” amounted primarily to issuing Evans written warnings for minor issues outside of his realm of responsibility. These facts relate directly to the job-related function Manoogian and Tilley performed as Evans’s supervisors. The conduct occurred within work hours and could be considered at least partially motivated by a desire to serve TJX. See Anzalone, 403 Mass. at 122-25 (supervisor’s complained of conduct related wholly to his position as plaintiffs manager and to the manner in which he exercised his supervisory duties); Fusaro, 40 Mass.App.Ct. at 123-24 (“[hjowever distorted the defendants’ understanding of the proper performance of their duties may have been,” unreasonable search of plaintiff pursuant to investigation into drug trafficking at work site was within scope of security guard’s employment); Tritak v. Data General Corp., Civil No. 95-0544 (Worcester Super. December 8, 1997) (Toomey, J.), available at 7 Mass. L. Rptr. 651, 656 (general allegation that plaintiffs supervisor directed verbally abusive comments to her in the workplace was insufficient to demonstrate that supervisor’s conduct was outside scope of his employment). But see O’Connell v. Chasdi, 400 Mass. 686, 690 (1987) (defendant’s sexual advances and assault of plaintiff during business trip were wholly unrelated to the interest of the employer and therefore not within course of employment); Brown v. Nutter, McClennen, & Fish, 45 Mass.App.Ct. 212, 218 (1998) (tort claim not barred by exclusivity provision where supervisor compelled plaintiff to falsify legal documents for his own personal gain and not to further law firm employer’s interest). Moreover, the complaint does not allege specific acts of assault taking the conduct outside of the scope of supervisory duties. The complaint does not allege that Manoogian or Tilley threatened Evans directly with physical violence, but merely contends that Manoogian told other employees that he wanted to physically assault Evans.
The gravamen of Evans’s claim is that Manoogian and Tilley threatened him, informed him that he must accept a demotion or face possible termination, and cited him for a series of minor infractions beyond the purview of his job responsibilities due to his sexual orientation. However, to determine whether Manoog-ian and Tilley were acting within the scope of employment for purposes of workers’ compensation exclusivity, the court employs an objective test “which assesses what the employee did and other facts in order to determine whether he acted at least in part for ajob-related purpose.” Brown, 45 Mass.App.Ct. at 218 (1998), quoting Mulford v. Mangano, 418 Mass. 407, 412 (1994). This Court concludes that the facts alleged in the complaint describe conduct within the scope of Manoogian and Tilley’s employment. Therefore, Evans’s emotional distress claims are barred by the exclusivity provision of the WCA.

2. Massachusetts Civil Rights Act

Evans asserts that Manoogian’s discriminatory harassment and TJX’s deliberate indifference to that harassment entitle him to relief under the MCRA. Evans’s claims pursuant to G.L.c. 12, §§1 II and 1 III, arise from the same set of facts as his claims under G.L.c. 15 IB. Defendants TJX and Manoogian argue that Evans’s MCRA claims are barred because G.L.c. 15 IB is the exclusive remedy for employment discrimination claims. Evans contends that his MCRA claims are not barred because he complied with G.L.c. 151 B’s procedural requirements.
General Laws c. 15 IB, §9, provides in relevant part: “(A]s to acts declared unlawful by section four, the procedure provided for in this chapter shall, while pending, be exclusive.” The Supreme Judicial Court has not yet expressly considered whether G.L.c. 151B bars claims under the MCRA where the plaintiff has complied with the administrative and procedural requirements of the statute. However, the Court has noted that in enacting G.L.c. 15 IB, the Legislature implemented a detailed framework that not only protects the citizens of the Commonwealth from employment discrimination but also provides employers with prompt and reasonable notice of discrimination claims. Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994). The Court has held that the broad exclusivity provision indicates a legislative intent “to subject all discrimination claims to some administrative scrutiny.” Id. at 585. Accordingly, “where c. 151B applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of the equal rights act or the civil rights act.” Green v. Wyman-Gordon, Co., 422 Mass. 551, 555 (1996) (citations omitted). See Doe v. Purity Supreme, Inc., 422 Mass. 563, 567 (1996) (affirming holding of Green); Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) (plaintiffs claims under equal rights act, G.L.c. 93, §§102(a) and 103(a), were barred by exclusivity provision of G.L.c. 151B); Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994) (plaintiff may not pursue a remedy under G.L.c. 93, §103, where remedy is also available under G.L.c. 15IB); Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 548 (1987) (“In the circumstances, G.L.c. 12, §§12H and 121, do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under G.L.c. 151B . . .”). Although the Court in Green and Charland dismissed the equal rights act and statutory sexual harassment claims of plaintiffs who did not comply with G.L.c. 15 IB’s procedural requirements, the con- *133 elusion does not necessarily follow that those plaintiffs who have satisfied the procedural requirements may recast their G.L.c. 15 IB claims as violations of the civil rights act.
The language of G.L.c. 151B as well as the relevant case law demonstrate that G.L.c. 15 IB, where applicable, provides an exclusive remedy, regardless of whether the plaintiff satisfied the procedural requirements. Daigle v. NECX, Inc., Civil No. 99-1555 (Essex Sup.Ct. February 23, 2001) (Kern, J.), available at 13 Mass. L. Rptr. 462, 465 (2001); Dahms v. Cognex Corp., Civil No. 99-3192 (Middlesex Sup.Ct. November 20, 2000) (Garsh, J.), available at 12 Mass. L. Rptr. 486, 489-90 (2000). Contra Cuddt v. Gallery Gift Shoppes, Civil No. 03-1369 (MiddlesexSup.Ct. October 24,2003) (Lauriat, J.), available at 17 Mass. L. Rptr. 65,66 (2003) (holding civil rights act claims not barred where plaintiff has satisfied the procedural requirements of 151B). Evans may find relief for his discrimination claims in the comprehensive remedial scheme set forth in G.L.c. 15 IB. Evans’s claims pursuant to the MCRA, G.L.c. 12, §§111 and 1 III, arise from the same set of facts as his claims under G.L.c. 151B. As such, Evans may not recast his G.L.c. 151B claims as violations of the civil rights act even though he has fulfilled the procedural requirements of G.L.c. 151B.

3. Breach of Contract (Employee Manual)

Evans alleges that TJX breached the terms of his employment contract by failing to offer him a process of evaluation and review pursuant to the Open Door policy. Evans further alleges that TJX also breached his employment contract by failing to implement measures promised by the Human Resources department after he utilized the Open Door policy. The defendants assert that the breach of contract claims must be dismissed because Evans has failed to establish the existence of an employment contract.
An employee at-will may be terminated at any time for any reason that is not in violation of clearly established public policy. Upton v. JWP Businessland, 425 Mass. 756, 757 (1997). As a general rule, where an employment contract, be it express or implied, contains no definite period of employment, it establishes employment at-will. Jackson v. Action for Boston Cmty. Dev., Inc., 408 Mass. 8, 9 (1988). Provisions of an employee manual will be enforced, however, to the extent that they instill a reasonable belief in employees that management will adhere to the policies therein expressed. Ferguson v. Host International, Inc., 58 Mass.App.Ct. 96, 102 (2001). “Where an employee signs a personnel policy, negotiates specific terms as a condition of beginning or continuing employment, or where an employer calls special attention to the policy, a finding that the terms of the policy form the basis of an implied contract may be justified.” Weber v. Cmty. Teamwork, Inc., 484 Mass. 761, 780 (2001), citing O’Brien v. New England Tel. & Tel Co., 422 Mass. 686, 692-93 (1996); Jackson v. Action for Boston Cmty. Dev., Inc., 408 Mass. 8, 15 (1988); Hillstrom v. Best Western TLC Hotel 265 F.Sup.2d 117, 129 (D.Mass. 2003).
The plaintiff became employed by TJX in 1988. The complaint does not allege that Evans executed a written employment contract, nor does it allege that he formed an oral express contract. He therefore relies upon the terms of the Policy Book as forming the basis of an implied contract. The Policy Book’s Introduction does not state terms of employment, and in fact reminds the employee of the at-will nature of the employment relationship. Here, Evans was not required to sign an acknowledgment of receipt of the handbook. Nor did he negotiate the terms of the Policy Book as a condition of his employment. Lastly, the introductory page reminds the employee that the policies contained within the manual are subject to change at the employer’s discretion. Based on the foregoing, no reasonable employee could have thought that the Policy Book amounted to an employment contract.
More specifically, Evans’s breach of contract claim centers on the language in the Open Door policy. The Open Door policy is defined in the Policy Book as “communication vehicle” designed to provide Associates with an “opportunity to speak openly and be treated fairly.” Moreover, while Management is called upon to address concerns equitably, the policy does not require management to take specific measures in response to every employee concern. Therefore, Evans could not reasonably rely on the terms of the Open Door policy to form the basis of an implied contract. See Chilson v. Polo Ralph Lauren Retail Corp., 11 F.Sup.2d 153, 156-57 (D.Mass. 1998).
4. Claims against John Doe and Richard Roe
The defendants move to dismiss the claims against John Doe and Richard Roe because Evans has had a reasonable time, through the discovery process, to uncover the identities of these defendants. In support of their motion, the defendants rely upon Mass.R.Civ.P. 17, which states that with a few enumerated exceptions “every action shall be prosecuted in the name of the real party in interest.” The rule further states that an action should not be dismissed for failure to prosecute in the name of the real party in interest “until a reasonable time has been allowed after objection for ratification of, the real party in interest.” Mass.R.Civ.P. 17. The defendants argue that Evans had a reasonable opportunity to uncover the existence of Doe and Roe during the lengthy pendency of his claim before the MCAD. The defendants allege that from the inception of this action, Evans has propounded limited discovery requests and taken no depositions. The language of Mass.R.Civ.P. 17 regarding the “real party in interest,” however, refers to the party prosecuting the claim, namely, the plaintiff. The rule is designed to provide defendants with adequate notice of those asserting claims against them.
Despite the defendants’ reliance upon Mass.R.Civ.P. 17, the court will nevertheless dismiss *134 Evans’s claims against Doe and Roe sua sponte. In reviewing the complaint, the court cannot locate any factual allegations against Doe or Roe that would entitle Evans to relief. Moreover, none of the counts of the complaint set forth allegations of actionable conduct by Doe or Roe. Although Evans has named Doe and Roe as defendants, he has not asserted any claims against them. Therefore, based upon substantive grounds, because the plaintiff has failed to state a claim against them, this Court ALLOWS the defendants’, the TJX Companies et al., motion to remove Doe and Roe as defendants in this case.

ORDER

For the foregoing reasons, it is hereby ORDERED that
1. defendants the TJX Companies, Marmaxx, Inc., Michael Manoogian and Michael Tilley’s Motion to Dismiss pursuant to Mass.RCiv.P. 12(b)(6) is ALLOWED as to Counts V, VI, VII, VIII, and X; and
2. defendants The TJX Companies, Marmaxx, Inc., Michael Manoogian and Michael Tilley’s Motion to Dismiss all claims asserted against John Doe and Richard Roe, unknown senior executives of the defendants is ALLOWED.

Plaintiff names T.J. Maxx as a defendant in his complaint; however, the correct corporate entity name is “The TJX Companies, Inc.”

The complaint does not allege any facts regarding the circumstances attending Evans’s initial employment with TJX or his receipt of the employee handbook.