Mikhail **SHKOLNIK**

v.

**COMBUSTION ENGINEERING, INC.**

Civ. No. 2:91CV00632 (PCD).

United States District Court,
D. Connecticut.

May 18, 1994.

Alicia B. Davenport, Duncan Ross Mac-Kay, Emanuel N. Psarkis, Robinson & Cole, Hartford, CT.

Leon M. Rosenblatt, Rosenblatt & Mills, West Hartford, CT.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff claims damages under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq.* Plaintiff was employed by Combustion Engineering, Inc. ("CEI") and its predecessor, Asea Brown Boveri, Inc. He worked at CEI's Systems Division until June 27, 1990, when he was laid off during a reduction in force ("RIF"). Plaintiff alleges that defendant's

inclusion of him in the RIF was based on his age. Pending are two motions for summary judgment by CEI, the first on all of plaintiff's claims of age discrimination. The second motion seeks summary judgment on the claim to recovery of life insurance proceeds.

### I. *BACKGROUND*

Mikhail Shkolnik [1] was employed as an N–10 Senior Drafter by CEI from March, 1978 to June 27, 1990.[2] In 1978, plaintiff was fifty years old and had the American equivalent of a masters degree in mechanical engineering. Throughout his employment, plaintiff was consistently graded within the competency range. Plaintiff was given a merit increase every year.

In June 1989, CEI reorganized the plaintiff's department. As a result, plaintiff was assigned to the Duct Design and Arrangement ("DDA") group, supervised by Ralph Fiore, who was responsible for evaluating the performances of the DDA N10 Senior Drafters. On February 8, 1990, Mr. Fiore reviewed and evaluated plaintiff's 1989 performance at 97 (on an ascending scale ranging up to 135). The five remaining N10 Senior Drafters in DDA had the following scores:

1) Thomas Hurd, then 23 years old, rated at 106

2) C.M. Galdo, then 31 years old, rated at 105

3) C.W. Mathiason, then 40 years old, rated at 110

4) Andrew Semyanko, then 63 years old, rated at 108

5) D.M. Williams, then 35 years old, rated at 110

In 1990, CEI decided to reduce its work force due to decreasing sales and a projected business decline. CEI had experienced its first significant RIF in 1985 and various RIF's had occurred since. Walter Siddall, Director of the Design Graphics Department (which included DDA) was solely responsible for deciding whom to lay-off. Mr. Siddall

---

1. During the pendency of this action, [Michael] Mikhail Shkolnik died. Nikolay Shkolnik, administrator of his estate, was substituted as plaintiff on March 24, 1992. The term "plaintiff" shall refer to Mikhail Shkolnik.

2. Immediately prior to being hired by defendant, plaintiff had worked as an independent contractor for defendant for a year.

selected plaintiff for termination. He was notified of his lay-off on June 27, 1990. Mr. Semyanko was informed that if he did not select early retirement, he would be laid off as well. The remaining four N10 Senior Drafters in DDA were unaffected by the RIF.

Defendant claims that plaintiff was terminated because: 1) he was in a group in which attrition would not affect the company's contractual obligations; 2) his position was not critical to the company's contractual obligations; and 3) his relative performance within the N10 Senior Drafter classification in the most recent evaluations. Prior evaluations were not considered.

## II. *Discussion*

### 1) *Age Claim*

■■■ Defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986) *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Inferences must be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In cases under ADEA, the non-moving party bears the ultimate burden to prove that the defendant discriminated, and the party may defeat summary judgment by producing facts sufficiently specific to establish that there is a genuine issue of material fact for trial. *Montana v. First Federal S. & L. Assoc.,* 869 F.2d 100, 103 (2d Cir.1989); *Butchko v. Textron Lycoming,* 796 F.Supp. 63, 65 (D.Conn. 1992).

■■■ ADEA prohibits treating an age-protected individual less favorably than others on account of his age. *See,* 29 U.S.C. § 623(a); *Haskell v. Kaman Corp.,* 743 F.2d 113, 119 (2d Cir.1984); *Stanojev v. Ebasco Serv., Inc.,* 643 F.2d 914, 919 (2d Cir.1981). A cause of action under ADEA requires evidence that plaintiff's age was a factor that made a difference in deciding whether the plaintiff would remain employed. *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). ADEA requires that "an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion or discharge." *Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir. 1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983).

■■■ Where there is no direct evidence of discrimination, an ADEA claim is analyzed under the shifting burdens described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Plaintiff must first establish a prima facie case of discrimination. *Getschmann v. James River Paper Co., Inc.,* 822 F.Supp. 75, 77 (D.Conn.1993). Defendant then must articulate legitimate, nondiscriminatory reasons for terminating plaintiff. If so, plaintiff must show that defendant's proffered reason is a pretext for discrimination. *Id.* "'[T]he ultimate burden' of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)).

■■■ A prima facie case of discrimination requires that plaintiff show that he was (1) over forty; (2) qualified for his former position; (3) discharged; and (4) replaced by a younger person. "In a reduction-in-force or structural reorganization case, a discharged

employee need not show that he was replaced by a younger, newly hired, employee, but only that his discharge occurred in circumstances giving rise to an inference of age discrimination." *Carr v. Precision Monolithics, Inc.,* Civ. No. 2:89CV675 (March 27, 1991) (PCD) (citations omitted). Defendant contends only that plaintiff cannot make out a prima facie case because the facts are insufficient to prove his replacement by a younger person.

■ Plaintiff claims that defendant retained several younger N10 Senior Drafters and that at least one of them performed some of plaintiff's functions. Defendant does not dispute that some of plaintiff's duties were reassigned to the remaining, younger drafters. A plaintiff's burden of proof at the prima facie stage is, relatively, "de minimis," especially where summary judgment is at issue. *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). "A showing that the discharged employee's duties have been reassigned to substantially younger employees' provides sufficient evidence from which an inference of age discrimination may be drawn." *Carr* at 7 (citations omitted). Plaintiff has thus established a prima facie case of age discrimination.

■ Once a plaintiff establishes a prima facie case, defendant is not required to prove that the stated reason for discharging the plaintiff is true, but must state a "clear and specific" reason for its conduct. *Meiri,* 759 F.2d at 997. CEI's evidence suggests that plaintiff's lay-off was based solely on objective information, specifically plaintiff's job performance as measured by the last performance evaluation. Defendant points to the fact that the sole basis for Mr. Siddall's decision was the most recent performance evaluation. Defendants' proffered reason for terminating the plaintiff is a legitimate, non-discriminatory reason.

■ Plaintiff must therefore show that defendant's reason for terminating him was merely a pretext for improper age-discrimination. *See Meiri,* 759 F.2d at 997. The question is not whether a defendant's purpose was unwise or unreasonable. The in-

quiry is whether the articulated purpose "is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High School,* 4 F.3d 166, 170–71 (2d Cir.1993).

■ An employee may satisfy his ultimate burden either directly by showing that the employer's proffered reasons were unworthy of credence or by proving that a discriminatory reason was the more likely reason for the employer's refusal to retain him. *See Meiri,* 759 F.2d at 997, (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94) (emphasis added). Plaintiff need not show "that age was the sole factor in the employer's decision" nor need he disprove the reason offered by the employer. *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir.1983). *See also, Geller v. Markham,* 635 F.2d at 1035 (quoting *Laugesen v. Anaconda Co.,* 510 F.2d 307, 317 (6th Cir.1975) (plaintiff entitled to recover if age made a difference, even if need to reduce workforce was "also a strong, and perhaps even more compelling reason.").

■ There is no evidence that plaintiff's department or job classification were inappropriate choices for layoffs. However, the record contains evidence which, if believed, would support a finding that defendant's proffered reasons as to plaintiff's termination are unworthy of credence. There is evidence that CEI's contention as to how it selected employees for the RIF—the most recent performance evaluations—is pretextual and that plaintiff's age made a difference.

As evidence of pretext, Shkolnik offers the experience of 63–year old Andrew Semyanko, who was forced to choose between early retirement or being laid off in spite of a higher performance score than two younger N10 Senior Drafters (Hurd and Galdo) in DDA. According to Semyanko's affidavit, on or about June 26, 1990, he first considered voluntary early retirement. After he decided not to pursue this program, he was told by his manager that it did not matter because he was going to be laid off anyway, (Plaintiff's Appendix item 136), despite the fact that he was the third highest rated N10 Senior Drafter in DDA. The two younger

N10 Senior Drafters, with lower recent performance scores than Mr. Semyanko, were 23 and 31 years old and neither was laid off. This account is supported by documents from defendant's files. Four days before the lay-offs, on June 22, 1990, a list of employees who would be retained was compiled. Semyanko was not listed. (Plaintiff's Appendix item 145–6). Mr. Semyanko's testimony could lead to a reasonable conclusion that individuals in plaintiff's department were targeted for lay-off because of their age and not as defendant contends.

Defendant contends that statements to Mr. Semyanko are inadmissible, citing *Haskell*, 743 F.2d 113, for the proposition that an ADEA plaintiff may not use the statements or experiences of former employees regarding alleged age discrimination to avoid summary judgment. *Id.* at 120. In *Haskell*, the court, over the defendant's objections, admitted testimony by six former company officers concerning the circumstances of their and other officers' terminations over ten years. The district court allowed this testimony into evidence, finding that it could "provide a circumstantial basis for an inference that the Company preferred younger employees ..." *Id.* The evidence was found inadmissible as a sample of ten terminations over eleven years was not statistically significant and, therefore, not relevant to the plaintiff's allegations. *Id.*

In contrast to *Haskell*, plaintiff does not rely on defendant's statements to Mr. Semyanko to establish a statistically significant pattern. If true, Mr. Semyanko's experience and defendant's statements to him are evidence from which a jury could infer that CEI's alleged principal basis for terminating the plaintiff—the 1990 performance evaluation—is pretextual because under the same circumstances, the evaluation did not bring about the same result. Further, unlike *Haskell*, the evidence here is not spread over ten years. Mr. Semyanko's experience arises in the contemporaneous events which affected the plaintiff. An employer's practices with respect to other members in a plaintiff's class is especially relevant in assisting a jury to draw inferences of pretext. *McDonnell*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

A genuine factual issue from which a reasonable jury might permissibly infer that plaintiff's age was a determining factor in CEI's RIF selection process is presented. Defendant's motion for summary judgment on the age claim is denied.

### 2) Damages Claim

During the period of time plaintiff was employed by CEI, he was a participant in CEI's cafeteria-type benefit plan ("Flex Plan"), under which plan employees could choose from a variety of benefits. Among the benefits selected by plaintiff was a Basic Life Insurance Policy with a $10,000 death benefit. A portion of the premium for this coverage was paid by CEI and a portion was co-paid by Mr. Shkolnik. Mr. Shkolnik was also covered by an Optional Life Insurance Policy with a death benefit equivalent to twice his salary, or approximately $49,712.00. This optional policy was not part of the Flex Plan. All premiums for this optional policy were paid for by plaintiff.

Following notification of his layoff, plaintiff was given an option to convert these two policies into personal policies, the premiums for which he would be responsible. This option allowed plaintiff to convert these two policies without a new insurability determination and a new medical examination. Plaintiff was also given the option of retirement, which would have allowed him to take advantage of CEI's 100% company-paid retirement life and medical insurance coverage. The retiree life insurance consisted of a wholly company paid policy with a $1,200.00 death benefit. Plaintiff rejected the opportunity to convert to personal policies, but elected to take retirement and the company-paid retiree medical benefits and life insurance policy with a $1,200.00 death benefit. Plaintiff claims that due to his allegedly unlawful termination from CEI and the concomitant loss of his group life insurance policies, he is entitled to the lost proceeds from those policies, amounting to $59,000.00.

Remedies in an ADEA claim should "ensure that victims of age discrimination [be] made whole." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d

Cir.1984) (citing *Geller v. Markham,* 635 F.2d at 1036). A claim for lost fringe benefits, including a life insurance policy, survives the death of an employee in an ADEA case. *Fariss v. Lynchburg Foundry,* 769 F.2d 958, 964 (4th Cir.1985); *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 279 (8th Cir.1983). The proper measure of damages available to an ADEA plaintiff is either the amount the employer paid in premiums on the employee's behalf, or the amount the employee paid to obtain comparable insurance, *Munnelly v. Memorial Sloan Kettering Cancer Center,* 741 F.Supp. 60 (S.D.N.Y. 1990); *Buckley v. Reynolds Metals Co.,* 690 F.Supp. 211, 219 (S.D.N.Y.1988), not the proceeds of the employee life insurance policy. *Fariss,* 769 F.2d at 965–66.

An ADEA plaintiff must mitigate his damages. *Munnelly,* 741 F.Supp. at 63–64; *Bonura v. Chase Manhattan Bank, N.A.,* 629 F.Supp. 353, 360–61 (S.D.N.Y.1986). In *Bonura,* an ADEA plaintiff chose not to convert his group life insurance coverage to an individual policy after his termination, even though no physical examination was required as part of the conversion. Under such circumstances, the court concluded that a plaintiff is entitled to recover only the expense of substitute life insurance coverage. Any other loss of life insurance protection would, however, not be recoverable since plaintiffs failed to mitigate their losses by converting their life insurance policies. *Id.* at 360–61.

Upon termination, plaintiff had the opportunity to convert his policies into private policies. Although he is not required to have accepted this opportunity, had he done so, he could have mitigated his life insurance damages. Accordingly, defendant's motion for summary judgment is granted as to damages. If defendant is found liable as to the age discrimination claim, plaintiff will be limited to the amount paid to obtain comparable life insurance. *See, Syvock v. Milwaukee Boiler Mfg. Co., Inc.,* 665 F.2d 149, 161 (7th Cir.1981) (in ADEA case, it was not abuse of discretion to refuse to award lost insurance benefits where plaintiff had not purchased alternative coverage), *rev'd on other grounds, Coston v. Plitt Theaters, Inc.,* 860 F.2d 834 (7th Cir.1988).

### III. CONCLUSION

The motion for summary judgment as to plaintiff's age discrimination claim (doc. # 52) is denied; the supplemental motion for summary judgment as to plaintiff's claim for damages in the form of life insurance proceeds (doc. # 68) is granted.

SO ORDERED.