RICHARD GASIOR vs. MASSACHUSETTS GENERAL HOSPITAL.

Suffolk. January 3, 2006. - May 11, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Employment,* Discrimination. *Anti-Discrimination Law,* Handicap, Termination of employment, Damages. *Damages,* Under anti-discrimination law, Punitive. *Statute,* Construction. *Practice, Civil,* Survival of action. *Survival of Action.*

This court concluded, pursuant to the Massachusetts survival statute, G. L. c. 228, § 1, that a claim that an employee was wrongfully dismissed in violation of G. L. c. 151B, § 4 (16), survives the employee's death [648-653], as do all of the remedies available to the employee under G. L. c. 151B, including punitive damages [653-656].

CIVIL ACTION commenced in the Superior Court Department on June 19, 2001.

A motion to dismiss was heard by *Bonnie H. MacLeod,* J., and a question of law was reported by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Shannon Liss-Riordan* for the plaintiff.

*Frank E. Reardon (John P. Puleo* with him) for the defendant.

The following submitted briefs for amici curiae:

*Jonathan J. Margolis & Robert S. Mantell* for Massachusetts Employment Lawyers Association.

*Beverly I. Ward* for Massachusetts Commission Against Discrimination.

MARSHALL, C.J. We consider in this case whether an employee's claim of unlawful employment termination in violation of G. L. c. 151B, § 4 (16), survives the employee's death and, if so, what damages may be awarded. The employee, Richard Gasior, filed a complaint against his employer, Massachusetts General Hospital (MGH), claiming it had violated G. L. c. 151B, § 4, and the Massachusetts Equal Rights Act (MERA), G. L.

c. 93, § 103, by refusing to permit him to return to work as a plumber after an authorized medical leave of absence. While the case was pending, Gasior died for reasons unrelated to his authorized medical leave.[1] MGH thereupon moved to dismiss the action on the grounds that Gasior's discrimination claim did not survive his death, and that his MERA claim was barred by the exclusivity provision of G. L. c. 151B. A judge in the Superior Court denied MGH's motion to dismiss the discrimination claim insofar as Gasior claimed compensatory damages, but allowed its motion as to that claim insofar as he claimed punitive damages. She also allowed MGH's motion as to Gasior's MERA claim.

On a joint motion of the parties, the judge then reserved and reported to the Appeals Court pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), so much of her ruling as concerned Gasior's discrimination claim: "Does an employment discrimination claim under G. L. c. 151B, § 4, survive the plaintiff's death pursuant to G. L. c. 228, § 1, insofar as the plaintiff claims compensatory but not punitive damages?"[2] We granted Gasior's application for direct appellate review.

We address the narrow question presented by the circumstances of this case, not the broader question reported by the judge. See McStowe v. Bornstein, 377 Mass. 804, 805 n.2 (1979) ("Reported questions need not be answered . . . except to the extent that it is necessary to do so in resolving the basic issue"). We conclude that a claim that an employee was wrongfully dismissed in violation of G. L. c. 151B, § 4 (16), survives the employee's death. We therefore affirm so much of the order as denied MGH's motion to dismiss. We further conclude that all of the remedies available to the employee under G. L. c. 151B survive his death. We therefore vacate so much of the judge's

[1]Following Richard Gasior's death, his attorney moved to substitute Gasior's estate as the plaintiff. The motion is pending resolution of this appeal. For ease of reference we shall refer to the plaintiff as Gasior.

[2]As noted above, Gasior also alleged that MGH had violated his rights under the Massachusetts Equal Rights Act (MERA), G. L. c. 93, § 103. The judge allowed MGH's motion to dismiss as to that claim, but did not report that aspect of her order to the Appeals Court. We therefore do not consider it.

decision that allowed MGH's motion to dismiss as to punitive damages.[3]

1. *Background.* The issue for our consideration is the correctness of the interlocutory order entered in the Superior Court on MGH's motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). See *McStowe* v. *Bornstein, supra.* Although MGH challenges some of the factual allegations in Gasior's complaint, in particular the circumstances of Gasior's efforts to return to work as a plumber, we review the question under the settled standard of review for a motion to dismiss pursuant to rule 12 (b) (6):

> "We take as true ' "the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor . . ." *Blank* v. *Chelmsford Ob/Gyn, P.C.,* 420 Mass. 404, 407 (1995). In evaluating the allowance of a motion to dismiss, we are guided by the principle that a complaint is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron,* 372 Mass. 96, 98 (1977) . . . .' "

*Marram* v. *Kobrick Offshore Fund, Ltd.,* 442 Mass. 43, 45 (2004). Under the "generous principles" that govern our review, *Connerty* v. *Metropolitan Dist. Comm'n,* 398 Mass. 140, 143 (1986), we summarize the facts alleged in the unverified complaint.

Gasior worked as a plumber for MGH for nineteen years, beginning in 1981. In February, 2000, he began an authorized medical leave of absence because of a heart condition. A physician approved Gasior's return to work in August, 2000. Gasior claims that from that time forward he was able to perform the essential functions of his job as a plumber "with or without reasonable accommodation," and that despite repeated attempts to return to his job as a plumber, MGH refused to permit him to return to work at that time, notwithstanding that MGH had posted several openings for plumbers.

In June, 2001, after exhausting his administrative remedies

---

[3]We acknowledge the amicus briefs filed by the Massachusetts Commission Against Discrimination and the Massachusetts Employment Lawyers Association.

by filing a claim with the Massachusetts Commission Against Discrimination, Gasior filed a complaint in the Superior Court. He requested relief consisting of reinstatement, back pay, front pay, lost benefits, emotional distress damages, punitive damages, and attorney's fees and costs, and any other relief to which he might be entitled. At some point while his action was pending, Gasior became terminally ill. He filed motions to advance his trial date, but died in September, 2003, one week before the trial was scheduled to begin.

2. *Survival of the discrimination claim.* We first discuss the survival of Gasior's G. L. c. 151B claim under the Massachusetts survival statute, G. L. c. 228, § 1.[4] We then turn to the issue of the relief that may be available.

The Massachusetts survival statute, G. L. c. 228, § 1, provides in pertinent part that, "[i]n addition to the actions which survive by the common law," certain enumerated claims, including certain specifically identified tort claims, survive the death of a party. A claim of employment discrimination in violation of G. L. c. 151B, § 4 (16),[5] is not a claim among those specifically enumerated in the statute. To remain viable after

---

[4]General Laws c. 228, § 1, provides:

"In addition to the actions which survive by the common law, the following shall survive: —

"(1) Actions under chapter two hundred and forty-seven;

"(2) Actions of tort (*a*) for assault, battery, imprisonment or other damage to the person; (*b*) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (*c*) for goods taken or carried away or converted; or (*d*) for damage to real or personal property; and

"(3) Actions against sheriffs for the misconduct or negligence of themselves or their deputies."

[5]General Laws c. 151B, § 4 (16), provides that it is unlawful for any employer "to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation."

Gasior's death, therefore, the claim must fall within one of the enumerated tort claims or be deemed an action that survives "by the common law." G. L. c. 228, § 1.

Generally speaking, at common law contract claims, including those based on an implied contract, survive the death of a party. See *Rendek* v. *Sheriff of Bristol County*, 440 Mass. 1017 (2003); *McStowe* v. *Bornstein, supra* at 806-807, and cases cited. We have not previously decided whether a claim of discrimination pursuant to G. L. c. 151B survives a plaintiff's death.[6] In other circumstances, in assessing whether a claim survives a party's death, we have observed that "[w]hat constitutes a contract claim has not been rigidly defined." *Rendek* v. *Sheriff of Bristol County, supra* at 1017. We have also recognized the close relationship between some employment discrimination claims and actions for what we have characterized as breaches of contract. See *id.* at 1017-1018 (claim for unlawful termination in violation of G. L. c. 35, § 51, is "contractual, or quasi contractual," and therefore survives plaintiff's death, because statute "control[s] a critical term of the employment — permissible grounds for termination"). See also *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 582 (2004) (Sosman, J., concurring) ("some discrimination claims are 'rooted' in theories of contract [in essence reading the prohibitions of G. L. c. 151B into the parties' employment contract and then allowing suit for 'breach' of that contract]").

In this case, we are presented with a specific question of alleged discrimination: does the claim of a plaintiff who has an established employment relationship with the defendant and who alleges that he was wrongfully dismissed or not reinstated by his employer, survive the plaintiff's death? The answer turns in part on the nature of the employment relationship. Gasior

---

[6]In *Alba* v. *Raytheon Co.*, 441 Mass. 836 (2004), we noted that the parties had raised the question whether a claim of handicap discrimination pursuant to G. L. c. 151B survives the plaintiff's death. Because we affirmed the determination of the judge in the Superior Court that the plaintiff's claim in that case was barred by the doctrine of collateral estoppel, we did not reach that issue. See *id.* at 838-839 & n.5. Contrary to MGH's assertion, the question of survivability of a discrimination claim may properly be addressed in this appeal.

claimed that he had a "good work record" and received "positive performance evaluations" while working at MGH, but his complaint is otherwise silent as to any other aspect of his employment relationship with MGH. Gasior has not, for example, alleged the existence of an employment contract for a definite period, or that he was a member of a union protected by any collective bargaining agreement that might govern his termination. We therefore assume, without deciding, that he was an at-will employee at MGH. See *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988). See also S.C. Moriearty, J.F. Adkins, L.F. Rubin, & D.J. Jackson, Employment Law § 2.3, at 94 (2d ed. 2003) ("Presumptively the employment relationship is at-will, meaning that either party may terminate the relationship at any time, with or without cause").

Although we have not characterized every at-will employment relationship as itself constituting a form of contract — such a relationship could, for example, be viewed as a contract of successive performances of indefinite duration[7] — we have had no difficulty in concluding that an at-will employment relationship contains implied terms, the breach of which is actionable. See, e.g., *DeRose* v. *Putnam Mgt. Co.*, 398 Mass. 205, 210 (1986) (permitting at-will employee to recover damages on a breach of contract theory for discharge in violation of

---

[7]At a very minimum, an at-will employment relationship encompasses an agreement by the employee to perform specified work and an agreement by the employer to pay for the work performed. In *Hishon* v. *King & Spalding*, 467 U.S. 69, 74 (1984), the United States Supreme Court noted that in the context of claims of unlawful employment discrimination, "the contract of employment may be written or oral, formal or informal; an informal contract of employment may arise by the simple act of handing a job applicant a shovel and providing a workplace."

Restatement (Second) of Contracts § 33 comment d (1981) suggests that an at-will employment relationship is a form of contract. See Grossman, Making a Federal Case Out of It: Section 1981 and At-Will Employment, 67 Brook. L. Rev. 329, 362-363 (2001). That comment to the Restatement provides: "Valid contracts are often made which do not specify the time for performance. . . . When the contract calls for successive performances but is indefinite in duration, it is commonly terminable by either party, with or without a requirement of reasonable notice." Illustration 6 to comment d supports the proposition that an at-will employment relationship may constitute an enforceable contract of indefinite duration. Restatement (Second) of Contracts, *supra* at § 33 comment d, illustration 6. See Grossman, *supra* at 362 & n.177.

public policy); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101 (1977) (written contract for at-will employment "contains an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract"). See also *Jackson* v. *Action for Boston Community Dev., Inc.*, *supra* at 9 (recognizing that prohibition against discrimination in employment contained in G. L. c. 151B, § 4, restricts employer's ability to discharge at-will employee). Here, the relevant provisions of G. L. c. 151B controlled a term of Gasior's employment at MGH: that term prohibited MGH from dismissing or refusing to reinstate him because of invidious, discrimination. See G. L. c. 151B, § 4 (16).[8] Because Gasior has alleged that MGH did not permit him to return to work after his medical leave in violation of this implied contractual term of his employment relationship with MGH, his claim is among those that survive "by the common law."[9] See *Rendek* v. *Sheriff of Bristol County*, *supra*. See also *United States* v. *Burke*, 504 U.S. 229, 247-248 (1992) (Souter, J., concurring) (Title VII's statutory ban on employment discrimination "easily envisioned as a contractual term implied by law"); *Hishon* v. *King & Spalding*, 467 U.S. 69, 74 (1984) ("Once a contractual relationship of employment is established, the provisions of Title VII attach and govern certain aspects of that relationship").

---

[8]As an employer of six or more persons, MGH was obligated to comply with the provisions of G. L. c. 151B. See G. L. c. 151B, § 1 (defining "employer" for purposes of the chapter). Gasior could, therefore, not maintain a common-law breach of contract claim for MGH's allegedly discriminatory dismissal of him because any such claim would be preempted by G. L. c. 151B. See *Reidy* v. *Travelers Ins. Co.*, 928 F. Supp. 98, 106 (D. Mass. 1996), aff'd, 107 F.3d 1 (1st Cir.), cert. denied, 522 U.S. 809 (1997).

[9]Gasior and the Massachusetts Commission Against Discrimination (MCAD), the agency charged with implementing G. L. c. 151B, appearing here as amici, present alternative theories for concluding that Gasior's claim pursuant to G. L. c. 151B survives his death. They argue that Gasior's claim survives as an action of tort for "other damage to the person," pursuant to G. L. c. 228, § 1. See note 4, *supra*. They also argue that the Legislature intended that all G. L. c. 151B claims survive, as demonstrated by the inclusion of "legal representatives" within the class of people who are able to file a claim pursuant to G. L. c. 151B with the MCAD, and the inclusion of the Probate and Family Court Department within the courts with jurisdiction over G. L. c. 151B actions. In light of our conclusion that in this case Gasior has stated a claim that survives at common law, we need not address these broader questions.

Our holding that a claim by an employee that he suffered invidious discrimination when he was dismissed or not reinstated by his employer survives his death is consistent with the decisional law of the majority of courts that have considered analogous questions. See, e.g., *Consolidated Rail Corp.* v. *Darrone*, 465 U.S. 624, 630 (1984) (former employee's claim that employer refused to permit him to return to work following a disabling accident, in violation of § 504 of the Rehabilitation Act of 1973, survives his death); *Fariss* v. *Lynchburg Foundry*, 769 F.2d 958, 962 n.3 (4th Cir. 1985) (former employee's claim that he had been terminated in violation of Age Discrimination in Employment Act [ADEA] survives his death as matter of Federal law); *Hawes* v. *Johnson & Johnson*, 940 F. Supp. 697, 704 (D.N.J. 1996) (former employee's claim of constructive discharge in violation of the ADEA and the New Jersey law against discrimination survives his death as a matter of Federal common law and under State survival statute, respectively); *Duart* v. *FMC Wyo. Corp.*, 859 F. Supp. 1447, 1451 n.2 (D. Wyo. 1994) (former employee's claim that he had been terminated from employment in violation of the ADEA survives his death); *Shkolnik* v. *Combustion Eng'g, Inc.*, 856 F. Supp. 82, 88 (D. Conn. 1994) (former employee's claim that he had been terminated from employment in violation of the ADEA survives his death); *Anspach* v. *Tomkins Indus., Inc.*, 817 F. Supp. 1499, 1510 (D. Kan. 1993) (former employee's Title VII claim survives his death under State survival statute); *Small* v. *American Tel. & Tel. Co.*, 759 F. Supp. 1427, 1430 (W.D. Mo. 1991) (former employee's claim that he was discriminated against and ultimately terminated because of his race, in violation of Title VII and 42 U.S.C. § 1981, survives his death under State survival statute); *Oliver* v. *United States Army*, 758 F. Supp. 484, 485 (E.D. Ark. 1991) (former employee's claim that his employer failed to accommodate his disability in violation of the Rehabilitation Act, leading him to terminate his employment, survives his death pursuant to State survival statute); *Worsowicz* v. *Nashua Corp.*, 612 F. Supp. 310, 312 (D.N.H. 1985) (former employee's claim that he had been terminated from employment in violation of the ADEA survives his death); *Pedreyra* v. *Cornell Prescription Pharmacies, Inc.*, 465 F. Supp.

936, 939 (D. Colo. 1979) (former employee's claim that she was terminated in violation of Title VII survives her death pursuant to State survival statute).[10]

We conclude that Gasior's claim that MGH violated G. L. c. 151B, § 4 (16), by dismissing or refusing to reinstate him following an authorized medical leave, survives his death. We turn next to the issue of damages.

3. *Survival of punitive damages.* Relying on *Harrison* v. *Loyal Protective Life Ins. Co.*, 379 Mass. 212, 216-217 (1979), the judge concluded that Gasior could recover compensatory damages, but that there was "no doubt" that Gasior's claim for punitive damages abated because it is "punitive rather than compensatory in nature." We recognize that the purpose of punitive damages has been described as punishment and deterrence, rather than compensation of an injured party,[11] see, e.g., *Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 266-267 (1981),

---

[10]Cf. *Slade* v. *United States Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (claim of failure to hire in violation of Title VII survives plaintiff's death); *Scott* v. *University of Del.*, 601 F.2d 76, 81 n.8 (3d Cir.), cert. denied, 444 U.S. 931 (1979) (State survival statute permits deceased plaintiff to pursue claims against former employer pursuant to 42 U.S.C. §§ 1981 and 1983 for discrimination on the basis of race in rehiring). Here, we are dealing with an alleged violation of G. L. c. 151B that occurred during the course of a contractual relationship between an employer and an employee. We do not address the broader question whether all claims under G. L. c. 151B, including violations allegedly occurring when there was no contractual relationship between the parties, would survive the death of the plaintiff. See *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 578 (2004) (Sosman, J., concurring) ("G. L. c. 151B sweeps far more broadly than breach of contract actions by discharged employees — it creates a cause of action for persons who had *no* contractual relation with the defendant, premised on the defendant's *refusal* to enter into a contract in the first place [e.g., discriminatory refusal to hire, or refusal to promote]").

[11]Under Federal common law, actions that are penal in nature do not survive the death of a party, but those that are remedial do survive. See, e.g., *Stewart* v. *Baltimore & O.R.R.*, 168 U.S. 445, 448 (1897); *Huntington* v. *Attrill*, 146 U.S. 657 (1892); *Asklar* v. *Honeywell, Inc.*, 95 F.R.D. 419, 423 (D. Conn. 1982). Federal courts have determined that Title VII and Age Discrimination in Employment Act (ADEA) claims, inter alia, are remedial in nature and that claims brought under these statutes survive the plaintiff's death. See, e.g., *Khan* v. *Grotnes Metalforming Sys. Inc.*, 679 F. Supp. 751, 756-757 (N.D. Ill. 1988) (ADEA and Title VIII); *Asklar* v. *Honeywell, Inc.*, supra (ADEA). See also *Oliver* v. *United States Army*, 758 F. Supp. 484, 485 (E.D. Ark. 1991) (former employee's discrimination claim under Rehabilitation Act survives his death pursuant to State survival statute). In one of the few cases analyzing the

citing Restatement (Second) of Torts § 908 (1979), and — in
the context of G. L. c. 151B — as not merely vindicating
personal rights, but comprising part of a scheme to vindicate a
"broader public interest in eradicating systemic discrimination."
*Stonehill College* v. *Massachusetts Comm'n Against Discrimina-
tion*, 441 Mass. 549, 563 (2004). Consistent with the broad
remedial purposes of G. L. c. 151B, which both mandates that
the provision concerning remedies available to the victims of
discrimination be construed liberally for the accomplishment of
the statute's purposes, G. L. c. 151B, § 9, and acts as a deter-
rent to those employers who engage in invidious discrimination,
we conclude that to the extent a deceased plaintiff's discrimina-
tion claim survives him,[12] he should have available to him all of
the remedies provided under the antidiscrimination statute. This
includes punitive damages.[13] See G. L. c. 151B, § 9 (petitioner
may be awarded "actual and punitive damages"); *Clifton* v.
*Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 624 (2005)
(punitive damages may be awarded for employment discrimina-
tion in violation of G. L. c. 151B). We see no reason to
distinguish as to statutory remedies between a plaintiff who has
suffered the indignities of unlawful discrimination (if proved)
and who survives, and a similarly aggrieved plaintiff who is
deceased, simply because the exigencies of court scheduling
may delay the granting of relief until after the plaintiff's death.[14]
As Gasior noted, individuals claiming unlawful discrimination

---

availability of punitive damages under both Federal and State statutes prohibit-
ing discrimination in employment, *Hawes* v. *Johnson & Johnson*, 940 F.
Supp. 697 (D.N.J. 1996), the court applied Federal common law to determine
that a deceased plaintiff's "claims for liquidated and punitive damages which
are penal in nature under the ADEA" do not survive his death, *id.* at 703, but
that his claims for both compensatory and punitive damages pursuant to the
New Jersey law against discrimination do survive his death pursuant to the
State survival statute, *id.* at 702.

[12]See note 10, *supra*.

[13]MGH does not challenge the judge's determination that compensatory
damages would be available to Gasior in the event that his G. L. c. 151B
claim survives his death. The judge did not address Gasior's claim for
emotional distress damages or attorney's fees and costs. If he prevails on his
discrimination claim, Gasior would be entitled to all of the remedies available
to a prevailing plaintiff under G. L. c. 151B.

[14]Gasior commenced this litigation more than two years before his death.
His emergency motion to advance the trial date was allowed, but scheduling

must first exhaust their administrative remedies, see G. L. c. 151B, § 9, and their cases sometimes take years to reach resolution. It would cause grave injustices to those plaintiffs who have embarked on the often burdensome and expensive journey to vindicate their rights if the full scope of their damages were to evaporate simply because of the fortuity of death.

Our conclusion is consistent with the broad remedial purposes underlying this Commonwealth's antidiscrimination statutes, which we have repeatedly emphasized in construing G. L. c. 151B. See, e.g., *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 390 (2005) (statutory limitations on tort liability of charitable entities do not "shield charitable institutions from the full effects of liability under G. L. c. 151B"); *Bain* v. *Springfield*, 424 Mass. 758, 763 (1997) (Commonwealth and its political subdivisions are liable for damages for violations of G. L. c. 151B); *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 387 (1988) (damage award for lost future earnings and benefits, or "front pay," available pursuant to G. L. c. 151B, § 9). The Legislature has provided for a broad range of remedies, including the availability of punitive damages, to those who suffer invidious discrimination.[15] See G. L. c. 151B, § 9. In determining whether Gasior's estate should be deprived of damages to which he himself would have been entitled had he survived, "we need not look beyond the words of the statute where the language is plain and unambiguous." *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984). Our decision that Gasior may have access to all of the remedies available under G. L. c. 151B is also consistent with the Legislature's determination that the "remedies provision contained in § 9 expressly states that it should be 'construed liberally for the accomplishment of' the purposes of G. L. c. 151B and that 'any law inconsistent with any provision [of G. L. c. 151B] shall not

conflicts of the court and the parties prevented the trial from taking place before his death.

[15]Punitive damages are appropriate "where a defendant's conduct warrants condemnation and deterrence," *Bain* v. *Springfield*, 424 Mass. 758, 767 (1997), but they "are not allowed in this Commonwealth unless expressly authorized by statute." *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 813 (1991).

apply.' " *Ayash* v. *Dana-Farber Cancer Inst.*, *supra* at 391-392, quoting G. L. c. 151B, § 9.

4. *Conclusion.* A claim that an employee was wrongfully dismissed in violation of G. L. c. 151B, § 4 (16), survives the employee's death, as do all of the remedies available to him under G. L. c. 151B. We affirm so much of the judge's order as denied MGH's motion to dismiss, and vacate so much of her order as allowed MGH's motion as to punitive damages. The case is remanded to the Superior Court for entry of an order consistent with this opinion.

*So ordered.*