Feeley, Timothy Q., J.
This is an employment discrimination case brought by plaintiff Robert LaF-ountaine (“LaFountaine”) against his former employer, BJ’s Wholesale Club, Inc. (“BJ’s”), and six of its employees (collectively with BJ’s, the “defendants”). LaFountaine’s original complaint alleges five claims against various defendants, and his pending motion to amend his complaint seeks to add Count VI to his original claims, all as follows:
Count I Disability discrimination under the Americans With Disabilities Act (the “ADA”) andG.L.c. 151B against BJ’s, St. Paul, Menard, Pace, and McCann
Count II Retaliation under the ADA and G.L.c. 15 IB against BJ’s, St. Paul, Menard, and McCann
Count III Infliction of emotional distress against BJ’s, Parker and Giorgio
Count IV Infliction of emotional distress against BJ’s, St. Paul, and Menard
Count V False imprisonment against BJ’s, St. Paul, and Menard
Count VI Massachusetts Civil Rights Act, G.L.c. 12, §§11H and 111.
Defendants move to dismiss Counts III, IV, and V of the original complaint, and oppose LaFountaine’s motion to amend his complaint to add a civil rights claim claiming that any such amendment would be *648 futile. Defendants do not challenge Counts I and II, the primary discrimination and retaliation claims, which appear factually to encompass all of the conduct subject to the challenged counts. Additionally, four of the six individual defendants, absent only Parker and Giorgio, are charged in Counts I and II. Thus, all of the alleged wrongful conduct, BJ’s, and four of the six individual defendants will remain in the case regardless of the court’s rulings on the pending motions.

BACKGROUND

The following facts relevant to Counts III, IV, and V are taken from LaFountaine’s complaint, and are accepted as true for the purposes of this motion. LaF-ountaine was an employee of BJ’s between 2000 and 2006, working during that time period at store locations in Westborough and Leominster. He suffers from PTSD and OCD/anxiety stemming from childhood abuse, but was able to manage his conditions well with lifestyle, counseling, and medication.
On March 4, 2005, while LaFountaine was working at the Leominster store, graffiti was found on the wall of the store near the employee’s entrance, depicting a male engaging in oral sex, along with the words “Rob . . . Sucks ***” or similar words. The drawn depiction resembled LaFountaine. His managers, Parker and Giorgio, instructed him to pose next to the graffiti with his mouth open so that his likeness to the graffiti drawing could be photographed. A month later LaF-ountaine suffered such emotional distress that he was forced to be admitted twice to a psychiatric hospital.
On April 21,2006, LaFountaine was wrongly accused of taking store property from the sales floor. He and another employee (who admitted to taking the property) were brought to the manager’s office by St. Paul and Menard. LaFountaine was told he would not be allowed to leave until he signed two disciplinary write-ups forms, which he feared would be the basis of his termination. Despite his mounting state of distress and requests to leave, LaFountaine was held in the manager’s office for approximately twenty minutes. He suffered a panic attack and was then allowed to leave the manager’s office after signing only one of the write-ups.

DISCUSSION

In considering a motion to dismiss, “the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor, are to be taken as true.” Nader v. Citron, 372 Mass. 96, 98 (1977). The Supreme Judicial Court has recently restated the motion to dismiss standard by adopting the recently reformulated standard adopted by the United States Supreme Court. In Iannacchino v. Ford Motor Company, 451 Mass. 623, 636 (2008), quoting liberally from Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007), the Supreme Judicial Court stated:
“While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his lentitle[ment]’ to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” What is required at the pleading stage are factual “allegations plausibly suggesting (not merely consistent with)” an entitlement to relief, in order to “reflect! ] the threshold requirement of [Fed.R-Civ.P.] 8(a)(2) that the ‘plain statement’ possess enough heft to ‘sho[w] that the pleader is entitled to relief.’ ”

1. Counts III and TV (Infliction of Emotional Distress)

Section 24 of G.L.c. 152, part of the comprehensive workers’ compensation act, provides in pertinent part: “An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injuiy that is compensable under this chapter, to recover damages for personal injuries ...” “Common law actions are barred only where: the plaintiff is shown to be an employee; his condition is shown to be a ‘personal injury’ within the meaning of the compensation act; and the injuiy is shown to have arisen ‘out of and in the course of employment.’ ” Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980); G.L. c. 152, §§24 and 26. The Supreme Judicial Court has held that emotional distress arising out of employment is a personal injuiy under c. 152, and that recoveiy under the workers’ compensation act is available for injuries of a mental or emotional nature. Fitzgibbons’ Case, 374 Mass. 633, 638 (1978); Albanese’s Case, 378 Mass. 14, 14-15 (1979). Accordingly, as LaFountaine conceded at the hearing on the dismissal motion, no action can be maintained against BJ’s for the infliction of emotional distress. See also Foley, 381 Mass. at 550.
Co-employees generally receive the benefit of the bar against common-law actions available to employers for an employee’s personal injuiy arising out of and in the course of employment. However, co-employees can be sued for tortious acts committed outside the course of employment and for reasons “unrelated to the interest of the employer.” Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 216 (1998).
An objective test is used to assess whether the co-employee acted in the course of employment or “at least in part for a job related purpose.” Fredette v. Simpson, 440 Mass. 263, 266 (2003) (quoting Mulford v. Mangano, 418 Mass. 407, 412 (1994). “The ‘course of employment’ test used in workers’ compensation cases is much broader than the ‘scope of employment’ test applied to determine whether a master is liable for a servant’s negligent acts.” Fredette, 440 Mass. at 266. “An employee has acted in the course of employment whenever he has, on the employer’s premises, engaged in conduct consistent with his contract of hire and pertinent or incidental to his employment.” Id. It is sufficient “as long as one significant purpose is related to the *649 employment.” Mendes v. Tin Kee Ng, 400 Mass. 131, 134-35 (1987). “The relevant inquiry with respect to claims against co-employees is whether, at the time of the injury, the co-employee acted in some way related to his or her employment.” Fredette, 440 Mass. at 267.
LaFountaine alleges two separate incidents in support of his infliction of emotional distress claims in Counts III and IV, and the court views the two incidents differently. Under an objective standard, the graffiti incident of March 2005 can be fairly inferred to be unrelated to the interests of BJ’s. Yes, BJ’s personnel should have investigated the incident. Additionally, photographing the graffiti was an appropriate step to preserve evidence, as presumably the company would have taken immediate steps to remove the graffiti from the walls of the building. However, the court is at a loss, given only the allegations in the complaint, to understand why BJ’s investigation should have included posing LaF-ountaine next to the offensive graffiti. If the issue was the amount of resemblance between LaFountaine and the drawn depiction, a photograph of LaFountaine hardly seems required to preserve a depiction of his appearance, much less a photograph requiring him to pose in a certain manner next to the graffiti. The court cannot find at this time that a significant purpose of employment was being pursued by defendants Parker and Giorgio when they posed and photographed LaF-ountaine next to the graffiti. Upholding Count III at this time is obviously without prejudice to the filing of a summary judgment motion after discovery is complete and more facts will be in the record.
The court reaches the opposite conclusion with respect to the April 2006 incident involving the investigation of disciplinary matters. The court concludes that LaFountaine has not alleged sufficient facts in his complaint for the court to conclude that “at least one significant purpose” of the disciplinary meeting in his manager’s office was not related to the employment of his co-employees. Accordingly, the workers’ compensation act protects his co-employees from being sued for any emotional injury inflicted that day.[2]

2. Count V (False Imprisonment)

Claims of false imprisonment have long been viewed as falling outside the scope of the workers’ compensation act, and accordingly, not barred by its exclusivity provision. Foley, 381 Mass. at 551 (citing Madden's Case, 222 Mass 487, 492 (1916), and McChristal v. Clisbee, 190 Mass. 120 (1906)).
LaFountaine’s claim of false imprisonment arises out of the same April 21, 2006, incident in his manager’s office that the court has found insufficient to support an infliction of emotion distress claim. He makes the following factual assertions in support of his claim: (1) he was wrongly accused of taking store property from the sales floor; (2) he (and another) were taken to his manager’s office; (3) he was told he would not be allowed to leave until he signed two disciplinary write-up forms which he feared would be the basis of his termination; (4) despite his mounting state of distress and requests to leave, he was held in his manager’s office for about twenty minutes. In his conclusory charging language LaF-ountaine alleges that he was “restrained in the manager’s office,” which restraint was unjustified.
The court finds the factual allegations insufficient to state a cause of action for false imprisonment. The leading case on this issue is Foley v. Polaroid Corp., 400 Mass. 82 (1987). Neither the facts of Foley nor the Court’s holding support LaFountaine’s claim of false imprisonment. In that case, in connection with a co-employee’s allegation of sexual assault, the chief security officer for Polaroid met alone with the plaintiff in a closed office, positioned his own chair between the plaintiffs chair and the door, repeatedly told the plaintiff to sit back down, positioned himself at all times between the plaintiff and the door, at one point pushing his own chair against the door to prevent the plaintiff from leaving, threatened that the plaintiff would be fired if he left the room, and refused several requests for the plaintiff to use the bathroom, all over the course of two hours. Id. at 87. As a matter of law the Supreme Judicial Court held that threats of discharge from employment cannot constitute the imprisonment required to establish a false imprisonment claim. Id. at 91-92. More specifically, the Court stated: “[A] employee at will who relinquishes his right to move about in return for continued employment, to which he is not entitled, is not imprisoned. He has a free choice.” Id. at 91.
The court finds LaFountaine’s factual allegations to fall far short of the conduct in Foley that, aside from the threat of termination, was sufficient to sustain a false imprisonment claim. Here, the claimed imprisonment lasted only “approximately 20 minutes.” Although LaFountaine claims unjustified restraint, the asserted facts do not permit such a conclusion by the court. Being told that he could not leave until he signed two disciplinary slips is the only “restraint” alleged by LaFountaine. This court, based on Foley, supra, finds such an assertion insufficient to support a claim of false imprisonment. If an employee being told he would be fired if he left the room is not enough to support a false imprisonment claim, then an employee being told that he must sign two disciplinary forms, which he believed would result in his termination, before being allowed to leave, is similarly insufficient.

3. Count VI (Civil Rights)

Although Count VI is before the court only on LaFountaine’s motion to amend complaint, the issue on that motion is essentially whether the civil rights claim sought to be added to this case in CountVI states a cause of action against the defendants. If it does, leave to amend will be granted. If it does not, leave to amend will be denied on the basis that any such amendment would be futile. See e.g., All Seasons Serv’s. v. Commissioner of Health & Hosps., 416 Mass. 269, 272 (1993); Shaw v. Siegel 13 Mass.App.Ct. 258, 265 (1982); Robinson v. City of Boston, 71 Mass.App.Ct. 765, 766 n.5 (2008).
*650 The Massachusetts Civil Rights Act (the “MCRA”) states, in pertinent part:
Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States . . . has been interfered with, or attempted to be interfered with [by any person or persons, whether or not acting under color of law, by threats, intimidation or coercion,] may institute and prosecute in his own name and on his own behalf a civil action for . . . money damages . . .
G.L.c. 12, §§11H, 111.
A violation of an employee’s civil rights is not a personal injuiy arising out of and in the course of employment, and is therefore, not barred by the exclusivity provision of the workers’ compensation act. Foley, 381 Mass. at 553. To establish a claim under the MCRA, LaFountaine must, to state a valid claim, allege that: (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth; (2) has been interfered with, or attempted to be interfered with; and (3) that the interference or attempted interference was by “threats, intimidation or coercion.” See G.L.c. 12, §11H. The Supreme Judicial Court has recognized that “by reaching private party actions, the Legislature did not intend to create ‘a vast constitutional tort,’ and thus explicitly limited the Civil Rights Act’s remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion.” Bally v. Northeastern University, 403 Mass. 713, 717 (1989) (citing Bell v. Mazza 394 Mass. 176, 182-83 (1985), and G.L.c. 12, §11H).
Defendants contend that LaFountaine cannot identify a secured right to which he was denied, as they claim at-will employment does not create a secured right. That may be so, but the court views LaFountaine’s claim as alleging a violation of his rights, secured by the ADA and G.L.c. 151B, to be free from discrimination and retaliation based on disabilities. The closer question is whether LaFountaine has asserted a derogation of that right “by threats, intimidation, or coercion.” However, the court need not address that issue because it rules that LaFountaine’s MCRA claim is barred by the exclusivity provision of G.L.c. 151B, §9.
It has long been clear that “where c. 15 IB applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of the equal rights act, ... or the civil rights act.” Green v. Wyman-Gordon Co., 422 Mass. 551, 555 (1996). See also Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) (plaintiffs claims under equal rights act were barred by exclusivity provision of G.L.c. 151B). However, in Green, Charland, and other similar appellate cases, the plaintiffs therein had not satisfied the procedural requirement of filing their discrimination complaint initially with the MCAD, and then, only upon the passage of ninety days, or with written assent from the MCAD, commencing a civil action in the appropriate trial court. G.L.c. 15IB, §9.
Here, LaFountaine alleges he complied with the procedural requirements of G.L.c. 151B, §5. Thus, the question of whether compliance with the procedural requirements of c. 15 IB, §5 defeats the exclusivity provision of §9 is squarely presented. No appellate case has been found by the parties or the court that decided the exact question, but numerous Superior Court Judges have weighed in, with decisions going both ways. The weight of authority holds that c. 15 IB provides an exclusive remedy, banring factually related claims under the MCRA, regardless of whether the plaintiff satisfied the administrative procedural requirements of c. 151B. See Evans v. TJ Maxx, Marmazz, Inc., 19 Mass. L. Rptr. 129 (February 15, 2005) (Smith, J.); Daigle v. NECX Inc., 13 Mass. L. Rptr. 462, 465 (2001) (Kern, J.); Dahms v. Cognex Corp., 12 Mass. L. Rptr. 486 (2000) (Garsh, J.). But see Cuddi v. Gallery Gift Shoppes, 17 Mass. L. Rptr. 65, 66 (2003).
This court sides with the weight of authority, and finds LaFountaine’s MCRA claim is barred. In addition to the Superior Court cases cited above, two recent appellate cases both appear to assume, admittedly without analysis, the outcome arrived at by this court. In Gasior v. Massachusetts General Hosp., 446 Mass. 645, 646 (2006), the Court held that an employment discrimination action survived the employee’s death. In Gasior, the employee exhausted his administrative remedies by filing a claim before the MCAD, and thereafter filed a complaint in the Superior Court. Id. at 648. In dicta, the Court noted that the employee could not maintain a common-law breach of contract claim for the employer’s allegedly discriminatoiy dismissal of him because any such claim would be preempted by G.L.c. 15 IB. Id. at n.8. In Robinson v. City of Boston, 71 Mass.App.Ct. 765, 768 (2008), the Appeals Court followed footnote 8 in Gaisor, and affirmed the dismissal of a breach of contract claim, despite the employee’s compliance with the procedural requirements before the MCAD on the c. 15 IB claim.

ORDER

Defendants’ partial motion to dismiss is ALLOWED IN PART, and DENIED IN PART. The motion is ALLOWED in that Counts III and IV are DISMISSED as to defendant BJ’s Wholesale Club, Inc.; Count IV is DISMISSED as to defendants BJ’s Wholesale Club, Inc., and defendants David St. Paul and Michael Menard; and Count V is DISMISSED against all named defendants. The motion is DENIED in that Count III is not dismissed as to defendants Patricia Parker and Joseph Giorgio. Plaintiffs motion to amend complaint is DENIED.

In so ruling, the court is not suggesting that the conduct alleged will not be relevant and admissible on Counts I and II of the complaint. That issue will be for the trial judge if the defendants contest its admission.